DUANE A. BOSWORTH, OSB #825077
duanebosworth@dwt.com
TIM CUNNINGHAM, OSB #100906
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

CAMERON STRACHER (admitted pro hac vice)
cam@stracherlaw.com
4 New York Plaza, 2d Floor
New York, NY 10004
Telephone:  (212) 743-6513
Facsimile:  (646) 810-3089

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| CONSUMER CELLULAR, INCORPORATED, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMERAFFAIRS.COM, INC., a Nevada corporation; CONSUMERS UNIFIED, LLC, a Nevada limited liability company; and DAVID ZACHARY CARMAN,<br><br>Defendants. | Case No. 3:15-cv-01908-PK<br><br>**DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE PLAINTIFF'S CLAIMS AND SUPPORTING MEMORANDUM**<br><br>**Oral Argument Requested** |

DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

**Page**

LR 7-1 CERTIFICATION ........................................................................................... 1

MOTION ...................................................................................................................... 1

MEMORANDUM IN SUPPORT ................................................................................. 1

    Introduction ........................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

    ConsumerAffairs ................................................................................................... 2

    Plaintiff's Allegations .......................................................................................... 4

ARGUMENT ............................................................................................................... 6

I.     THIS LAWSUIT IS SUBJECT TO A SPECIAL MOTION TO STRIKE UNDER OREGON'S ANTI-SLAPP STATUTE ........................................................ 6

    A.    Plaintiffs' claims arise out of actions covered by ORS 31.150(2) ........................ 7

        1.    Plaintiff's claims arise from statements made in a public forum ............... 8

        2.    Plaintiff's claims arise from other conduct in furtherance of free speech rights. ...................................................................................................... 9

        3.    The statements and conduct at issue involve a matter of public interest. . 10

    B.    Plaintiff bears the burden of demonstrating a probability of success ................... 11

II.    PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF SUCCESS ON THE MERITS OF ITS CLAIMS ...................................................................... 11

    A.    Unlawful trade practices ...................................................................... 12

    B.    Interference with prospective economic relations ................................................ 13

    C.    RICO ................................................................................................... 14

        1.    Plaintiff cannot establish that defendants conducted a RICO enterprise. . 15

        2.    Plaintiff cannot establish a "pattern" of racketeering activity. ................ 16

        3.    Plaintiff cannot establish any racketeering activity ................................. 17

            a.    Wire fraud ................................................................................... 17

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

    b.  Extortion ..................................................................................... 19

  D.  Defamation.......................................................................................... 20

  E.  Claims Against Defendant Carman ..................................................... 23

CONCLUSION.................................................................................................................. 25

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Accuardi v. Fredericks*,
   No. 3:13-cv-01825-ST, 2014 WL 848263 (D. Or. Mar. 4, 2014) ....................................7, 8, 9

*Akers v. U.S.*,
   No. Civ. 01-1348-HU, 2002 WL 32512845 (D. Or. April 3, 2002) .......................................16

*Alan Neuman Prods., Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) ...............................................................................................16

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)................................................................................................................18

*Arenas v. Shed Media U.S. Inc.*,
   881 F. Supp. 2d 1181 (C.D. Cal. 2011) ..................................................................................10

*Ascentive, LLC v. Opinion Corp.*,
   842 F. Supp. 2d 450 (E.D.N.Y. 2011) ....................................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................20

*Aviation Charter, Inc. v. Aviation Research Group/US*,
   416 F.3d 864 (8th Cir. 2005) .................................................................................................21

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...............................................................................................23

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) ...................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................20

*Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*,
   206 F.3d 980 (10th Cir. 2000) ...............................................................................................23

*Benson Tower Condominium Owners Ass'n. v. Victaulic Co.*,
   22 F. Supp. 3d 1126, 1135-36 (D. Or. 2014) .........................................................................12

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Browne v. Avvo Inc.*
  525 F. Supp. 2d 1249 (W.D. Wash. 2007)..............................................................22

*Buena Vista, LLC v. New Resource Bank*,
  No. C 10–01502 CW, 2011 WL 250361 (N.D. Cal. Jan. 26, 2011)......................17

*Calloway v. Scribner*,
  No. 1:11–CV–00803 DLB, 2011 WL 5975784 (E.D. Cal. Nov. 29, 2011)..........24

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ..............................................................................22

*Casablanca Prods. Inc. v. Pace Intern. Research, Inc.*,
  697 F. Supp. 1563 (D. Or. 1988) ..........................................................................17

*Dost v. Nw. Trustee Servs., Inc.*,
  No. 3:11–cv–00270–ST, 2011 WL 6794028 (D. Or. Dec. 21, 2011)....................15

*DuBoff v. Playboy Ent. Intern., Inc.*,
  Civ. No. 06-358-HA, 2007 WL 1876513 (D. Or. June 26, 2007) ......................9, 10

*Evans v. Sirius Computer Solutions, Inc.*,
  No. 3:12–CV–46–AA, 2012 WL 1557294 (D. Or. May 1, 2012)..........................13

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 at n. 36 (9th Cir. 2008)..................................................................23

*FLIR Systems, Inc. v. Sierra Media, Inc.*,
  No. CV–10–971–HU, 2011 WL 1832806 (D. Or. May 10, 2011)....................13, 14

*Flores v. Emerich & Fike*,
  416 F. Supp. 2d 885 (E.D. Cal. 2006)....................................................................15

*Gardner v. Martino*,
  563 F.3d 981 (9th Cir. 2009) ..................................................................................6

*Gardner v. Martino*,
  No. CV-05-769-HU, 2005 WL 3465349 (D. Or. Sep. 19, 2005) ...............6, 8, 9, 10

*Higher Balance, LLC v. Quantum Future Group, Inc.*,
  Civ. No. 08-233-HA, 2008 WL 5281487 (D. Or. Dec. 18, 2008) ..................6, 8, 10

*Hopscotch Adoptions, Inc. v. Kachadurian*,
  2011 WL 587357 (E.D. Cal. 2011)........................................................................11

*Joe Hand Promotions, Inc. v. Holmes*,
  2015 WL 5144297 (D. Or. Aug. 31, 2015)............................................................24

Page iv - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

DWT 28134255v4 0105455-000001

*L & A Designs v. Xtreme ATVs, Inc.*,
   2012 WL 1532417 (D. Or. April 30, 2012) ............................................................12

*LaHodny v. 48 Hours, et al.*,
   No. 6:13–cv–02102–TC, 2015 WL 1401676 (D. Or. Mar. 24, 2015) .........................11, 13, 14

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ............................................................14

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ............................................................19, 20

*Levitt v. Yelp! Inc.*,
   Nos. C–10–1321 EMC, C–10–2351 EMC, 2011 WL 5079526 (N.D. Cal. Oct.
   26, 2011), *aff'd on other grds.,* 765 F.3d 1123 (9th Cir. 2014) .............................9, 19, 22, 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ............................................................21

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ............................................................14

*Lorenz v. Deutsche National Trust Co.*,
   No. 3:15–cv–680–SI, 2015 WL 5813174 (D. Or. Oct. 5, 2015) ............................................18

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003) ............................................................23

*Medallion Television Ent., Inc. v. SelecTV of California, Inc.*,
   833 F.2d 1360 (9th Cir. 1987) ............................................................16

*Metabolife Int'l Inc. v. Wornick*,
   264 F.3d 882 (9th Cir. 2001) ............................................................6

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ............................................................16

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ............................................24

*Pierce v. Citibank (South Dakota), N.A.*,
   856 F. Supp. 1451 (D. Or. 1994) ............................................................17

*Quantum Technologies Partners II v. Altman Browning and Co.*,
   No. 08–CV–376–BR, 2009 WL 1795574 (D. Or. June 23, 2009) ............................................14

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)............................................................................15

*Sanville v. Bank of American Nat. Trust & Savings Ass'n*,
    18 Fed. Appx. 500 (9th Cir. 2001)......................................................18

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986) ............................................................17

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)............................................................................16

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ............................................................16

*Slep-Tone Entm't Corp. v. Shenanigans Lounge*,
    No. 6:12–cv–1236–TC, 2013 WL 1768444 (D. Or. Feb. 22, 2013).......................12

*Smith v. U.S. Bank, N.A.*,
    Civ. No. 10–3077–CL, 2011 WL 7628515 (D. Or. Oct. 26, 2011) .........................17

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ..............................................................19

*Stutzman v. Armstrong*,
    No. 2:13–CV–00116–MCE–KJN, 2013 WL 4853333 (E.D. Cal. Sep. 10,
    2013) ..................................................................................................9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..............................................................15

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ............................................................18

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ......................................................16, 17

*United Broth. Of Carpenters and Joiners of Am. v. Building and Const. Trades
Dept.*,
    770 F.3d 834 (9th Cir. 2014) ..............................................................19

*United States v. Enmons*,
    410 U.S. 396 (1973)............................................................................19

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................17

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Wahluke Produce, Inc. v. Guerra Mktg. Int'l,*
    No. 1:11–cv–1981, 2012 WL 1601876 (E.D. Cal. May 7, 2012)...........................................24

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) .................................................................................................22

*ZL Technologies, Inc. v. Gartner, Inc,*
    709 F. Supp. 2d 789 (N.D. Cal. 2010) ...................................................................................21

**State Cases**

*Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.,*
    No. 01–12–00990–CV, 2013 WL 3716693 (Tex. Ct. App. July 16, 2013)............................22

*Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.,*
    354 S.W.3d 234 (Mo. Ct. App. 2011).....................................................................................22

*Damon v. Ocean Hills Journalism Club,*
    85 Cal. App. 4th 468 (2000) ..................................................................................................10

*Donato v. Moldow,*
    865 A.2d 711 (N.J. Super. Ct. App. Div. 2005)......................................................................23

*DuPont Merck Pharmaceutical Co. v. Superior Court,*
    92 Cal. Rptr. 2d 755 (Cal. Ct. App. 2000) ............................................................................10

*Hickey v. Settlemier,*
    141 Or. App. 103, 917 P.2d 44 (1996)....................................................................................21

*Hill v. StubHub, Inc.,*
    727 S.E.2d 550 (N.C. Ct. App. 2012) *review denied,* 736 S.E.2d 757 (N.C. 2013) ......................................................................................................................................23

*Melaleuca, Inc. v. Clark,*
    78 Cal. Rptr. 2d 627 (Cal. Ct. App. 1998) ............................................................................11

*Mullen v. Meredith Corp.,*
    271 Or. App. 698, 353 P.3d 598 (2015)....................................................................................7

*Navellier v. Sletten,*
    29 Cal. 4th 82, 52 P.3d 703 (2002) ..........................................................................................7

*Neumann v. Liles,*
    261 Or. App. 567, 323 P.3d 521 (2014).................................................................................7, 9

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Or. Educ. Ass'n v Parks*,
    253 Or. App. 558, 291 P.3d 789 (2012)..................................................................7

*Page v. Parsons*,
    249 Or. App. 445, 277 P.3d 609 (2012)..................................................................7

*Seelig v. Infinity Broadcasting, Co.*
    97 Cal. App. 4th 798 (2002) .................................................................................10

*Shiamili v. The Real Estate Group*,
    952 N.E.2d 1011 (N.Y. 2011)...............................................................................23

*Staten v. Steel*,
    222 Or. App. 17, 191 P.3d 778 (2008)....................................................................6

*Themed Restaurants, Inc. v. Zagat Survey, LLC*,
    21 A.D.3d 826 (N.Y. App. Div. 2005) ..................................................................21

*United Employer Ben. Corp. v. Dept. of Ins. and Fin.*,
    133 Or App 477, 892 P.2d 722 (1995)..................................................................14

*Uptown Heights Associates Ltd. v. Seafirst Corp.*,
    320 Or. 638, 891 P.2d 639 (1995) .........................................................................13

*Young v. Davis*,
    259 Or. App. 497, 314 P.3d 350 (2013)..................................................................6

**Federal Statutes**

18 U.S.C. § 1962(c) ..........................................................................................................14

47 U.S.C. § 230(c)(1).............................................................................................12, 22, 23

**State Statutes**

ORS 31.150..........................................................................................................................6

ORS 31.150(1) .....................................................................................................................7

ORS 31.150(2) ........................................................................................................1, 6, 7, 11

ORS 31.150(2)(c)..................................................................................................................8

ORS 31.150(2)(d)..................................................................................................................9

ORS 31.150(3)...............................................................................................................7, 11

Page viii - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

ORS 31.150(4) ...................................................................................................................7

ORS 31.150-152 ...............................................................................................................6

ORS 31.150 *et seq.* ..........................................................................................................1

ORS 31.152(3) ..................................................................................................................1

ORS 31.152(4) ..................................................................................................................6

ORS 164.075 ...................................................................................................................19

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................24

Fed. R. Civ. P. 9(b) ...................................................................................................14, 15

Fed. R. Civ. P. 12(b)(6) .................................................................................................11

Fed. R. Civ. P. 56 ..........................................................................................................11

**Other Authorities**

Gregory P. Joseph, *Civil RICO* § 9C (2d ed. 2000) ....................................................15

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## LR 7-1 CERTIFICATION

Counsel for defendants affirm that the parties made a good faith effort, through a telephone conference on October 16, 2015 between defense counsel, Duane A. Bosworth, and plaintiff's counsel, Thomas R. Rask, III, to resolve the disputes at issue in these motions, but have been unable to do so.  Included in that conference was a discussion of Oregon's anti-SLAPP statute and its attorney fee provision.

## MOTION

Pursuant to ORS 31.150 *et seq.*, defendants move to strike all of plaintiff's claims on the grounds that the claims arise out of statements and/or conduct described in ORS 31.150(2), and plaintiff cannot establish a probability that it will prevail on any claim by presenting substantial evidence to support a *prima facie* case.  Defendants also move for an award of their reasonable attorney fees and costs pursuant to ORS 31.152(3).

This motion is supported by the Memorandum in Support of Special Motion to Strike, the concurrently filed Declaration of David Zachariah Carman, and the records and file of this case.

## MEMORANDUM IN SUPPORT

### Introduction

This lawsuit arises from plaintiff's unhappiness over the presentation of reviews posted by consumers about its business on the website consumeraffairs.com, owned and operated by defendants ConsumerAffairs.com, Inc. and Consumers Unified, LLC.  Plaintiff doesn't complain about the actual content of any review itself but instead, under a variety of tort theories, challenges the manner in which the website is edited and organized, and how defendants collect and post reviews.  Regardless of their denomination, however, plaintiff's claims arise from defendants' statements and conduct in furtherance of their free speech rights on a matter of public interest.  Therefore, those claims are subject to the provisions of Oregon's "anti-SLAPP" statute, which provides a streamlined procedure for striking meritless claims unless plaintiff can demonstrate a probability that it will prevail by presenting substantial evidence to support a

Page 1 - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

prima facie case.  Here, for the reasons set forth below, plaintiff is unable to satisfy its burden.
Therefore, its claims should be stricken and defendants awarded their attorneys' fees and costs,
as provided under the statute.

## FACTUAL BACKGROUND

### ConsumerAffairs

Defendants ConsumerAffairs.com, Inc. and Consumers Unified, LLC, own and operate
consumeraffairs.com, a website for consumer news, information, and advocacy founded in 1998
by James R. Hood, a veteran Washington, D.C. journalist and public affairs executive, who spent
ten years working at United Press International and the Associated.  Declaration of David
Zachariah Carman, dated October 14, 2015 ("Carman Dec."), ¶ 2.  (Collectively,
ConsumerAffairs.com, Inc., Consumers Unified, LLC, and consumeraffairs.com are referred to
herein as "ConsumerAffairs").  Defendant David Zachariah Carman (sued as "David Zachary
Carman") is the Managing Director of Consumers Unified, LLC, and President of
ConsumerAffairs.com.  *Id.* at ¶ 1.  He has no majority ownership position in either entity.  *Id.*

ConsumerAffairs provides news and information to more than seven million unique
visitors each month.  *Id.* at ¶ 3.  Its website, located at www.consumeraffairs.com, consists of
original content created by its own journalists, as well as information about product recalls and
tens of thousands of product reviews posted by consumers.  *Id.*  ConsumerAffairs sells no
products or services to consumers; it earns revenue solely through advertising and through
accreditation agreements with member businesses.  *Id.* at ¶ 4.  ConsumerAffairs' membership
program, known as ConsumerAffairs for Brands, is based on the recognized phenomenon among
online marketers that satisfied customers are much less likely to provide feedback about
companies whose products and services they purchase than are unhappy customers.  *Id.* at ¶ 5.
On the other hand, angry customers are motivated to give feedback because they face a problem
that needs to be solved and – fairly or unfairly – they will tolerate friction to make their voice

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

heard. *Id.* This motivation is why the number of negative reviews tend to outnumber positive reviews on online forums. *Id.*

As a free service, ConsumerAffairs offers companies the opportunity to respond to customers who have posted reviews on the ConsumerAffairs' website. *Id.* at ¶ 6. For a fee, as part of its membership program, ConsumerAffairs provides companies with tools to assist them in collecting reviews from their customers such as a software application that companies can use on their Facebook page for consumers to write and submit reviews. *Id.* It also offers member businesses a dispute resolution process to address concerns of unhappy customers who may then (if they choose) change the "satisfaction rating" (or "star rating") they have given the company on ConsumerAffairs' website. *Id.* If the dispute cannot be resolved, ConsumerAffairs will place a "badge" indicating that the dispute is unresolved and its status.[1] *Id.* at ¶ 7. Because the dispute is considered unresolved, the customer's satisfaction rating will not appear on the website and will not be included when calculating the company's overall satisfaction average. *Id.* In addition, satisfaction ratings that are older than one year are not included in calculating a company's average because they are considered less meaningful. *Id.* In no cases, however, will ConsumerAffairs remove a review or increase a customer's satisfaction rating at a company's request. *Id.*

ConsumerAffairs does not prevent any legitimate consumer from posting comments on its website. *Id.* at ¶ 8. However, like most consumer-focused sites, ConsumerAffairs must contend with "spam" reviews. *Id.* This includes reviews that are auto-generated, fake, or written by a company itself. *Id.* Thus, in an effort to protect the integrity of the reviews posted on its website, ConsumerAffairs employs sophisticated software to flag potentially illegitimate

---

[1] Depending on the response, ConsumerAffairs will indicate on the review: "Resolved Outside ConsumerAffairs," "Insufficient Response Received," "Factual Basis Uncertain," or "No Response Received." Carman Decl. ¶ 7.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

reviews, which are then manually reviewed prior to publication.  *Id.*  If the reviews are determined to be spam, they are not published.  *Id.*

### Plaintiff's Allegations

Plaintiff purports to be a "mobile virtual network operator" that provides cellphone service to more than two million customers nationally, "featuring no-contract, affordable pricing and a focus on people over 50."  Compl. ¶ 2.  It claims to be "a well-respected consumer advocate for all people 50 and over" and to have received various awards for customer service over the years.  *Id.*  Despite this, in August 2014, plaintiff's satisfaction rating (or "star rating") on ConsumerAffairs' website was only 2 out of 5 stars.  *Id.* ¶ 17.

Around this time, according to plaintiff, ConsumerAffairs' Sales Account Executive Andrew Polacek began making a series of "cold call" email pitches, followed by several telephone calls, in an attempt to sell ConsumerAffairs' membership program to plaintiff.  Compl. ¶¶ 5-9.  Believing it had no choice but "to pay the lucrative fees for ConsumerAffairs to transform their ConsumerAffairs ratings and images," plaintiff "asked for materials to go forward."  *Id.* ¶¶ 10-11.  Plaintiff's CEO, however, "declined to enter the deal because he did not believe the coercive practices of ConsumerAffairs were just."  *Id.* ¶ 12.  Thereafter, Polacek continued to send emails "commenting on the increasingly harmful impact" that plaintiff's negative reviews and low satisfaction rating on the ConsumerAffairs website had on its business and on search results.  *Id.* ¶¶ 12-14.

ConsumerAffairs' actions, plaintiff alleges, were part of a year-long effort to deceive consumers and extort plaintiff into entering a business relationship with ConsumerAffairs.  *Id.* ¶¶ 15-16.  This included posting at least eight 5-star reviews during the six-month period from October 2013 to April 2014, but then posting only one positive 4-star review in the four-month period before Polacek's emails and phone calls.  *Id.* ¶ 17.  Then, while the parties contemplated a business transaction, according to plaintiff, ConsumerAffairs posted two positive reviews within several weeks of each other, *id.* ¶ 18, but since then has posted only two positive reviews, one of

Page 4 - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

which has vanished from ConsumerAffairs' website.  *Id.*  As a result of this "positive review posting drought," plaintiff claims, its satisfaction rating on ConsumerAffairs has "shrunk" to nearly 1-star.  *Id.* ¶ 19.  Plaintiff also complains that a favorable article about it was removed from the website, ¶ 21(a), a consumer submitted a positive review that was not posted, *id.* ¶ 21(b), and a negative review was updated and then disappeared.  *Id.* ¶ 21(c).

In addition, plaintiff alleges that ConsumerAffairs has engaged "in a scheme of misrepresentation and deception of internet consumers" by excluding positive reviews of plaintiff, *id.* ¶ 22(b), changing or removing negative reviews for accredited members, *id.* ¶ 22(c), and basing plaintiff's satisfaction rating and "rating distribution" on a subset of star-rated reviews.  *Id.* ¶¶ 22(d) & 22(e).  According to plaintiff, ConsumerAffairs "deceptively creates intentionally nuanced descriptions" for accredited members by using the words "Reviews and Complaints" in the company description on its web page, rather than "Complaints and Reviews," which it uses for non-members.  *Id.* ¶ 22(f).  This results in a "divergent impact" on consumers, plaintiff alleges, who believe that accredited companies have more Reviews while unaccredited companies have more Complaints.  *Id.*

As evidence of this deception, plaintiff points to its competitor, Jitterbug, which became an accredited member in late 2014, and was "transformed to an overall rating of nearly 5 full stars."  *Id.* ¶ 22(g)(i).  During that same time period, plaintiff claims, eight of ten negative reviews of Jitterbug had their star ratings removed.  *Id.*  In addition, more recent negative reviews were re-ordered so as to appear below later, but more positive, reviews.  *Id.* ¶ 22(g)(ii).  Finally, in an effort to "deceptively impugn and negatively impact" plaintiff and to "manipulate viewers in order to take business away from Consumer Cellular" and direct them to Jitterbug, ConsumerAffairs posted a prompt on plaintiff's review page that reads:  "Not Impressed with Consumer Cellular?  Find a company you can trust.  Compare Top Alternatives."  *Id.* ¶ 22(h).

Plaintiff brought this lawsuit on August 19, 2015, alleging claims for unlawful trade practices, intentional interference with prospective economic relations, RICO, and defamation,

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

DWT 28134255v4 0105455-000001

and seeking damages for alleged harm to its business and property.  The two corporate

defendants were served on September 9, 2015.  Defendants timely removed the case to this court

on October 9, 2015.  This motion to strike follows.

## ARGUMENT

## I.    THIS LAWSUIT IS SUBJECT TO A SPECIAL MOTION TO STRIKE UNDER OREGON'S ANTI-SLAPP STATUTE

Oregon's "anti-SLAPP" statute was enacted in 2001.[2]  *See* ORS 31.150-152.  This

statutory procedure is designed to enable a defendant who is sued "over certain actions taken in

the public arena" to challenge and have claims dismissed without the burden of discovery or

trial.  *See Staten v. Steel*, 222 Or. App. 17, 27, 191 P.3d 778 (2008); *accord* ORS 31.152(4) (anti-

SLAPP procedure "provide[s] a defendant with the right to not proceed to trial in cases in which

the plaintiff does not meet the burden specified in [the statute].").  The purpose of the statute is to

"'protect[] individuals from meritless, harassing lawsuits whose purpose is to chill protected

expression.'"  *Gardner v. Martino*, No. CV-05-769-HU, 2005 WL 3465349, at *2 (D. Or.

Sep. 19, 2005) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 837 n.7 (9th Cir. 2001)).

The procedure is available to defendants in federal court.  *Higher Balance, LLC v. Quantum*

*Future Group, Inc.*, Civ. No. 08-233-HA, 2008 WL 5281487, at *2 (D. Or. Dec. 18, 2008).

ORS 31.150 creates a two-step procedure for analyzing whether a claim must be

dismissed under the statute.  *Young v. Davis*, 259 Or. App. 497, 501, 314 P.3d 350 (2013).  First,

a defendant must demonstrate that the claim against which the motion is made arises from one of

the categories of civil actions described in O.R.S. 31.150(2).  *Gardner v. Martino*, 563 F.3d 981,

986 (9th Cir. 2009) (applying Oregon law).  Those include:

> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

---

[2] "SLAPP" stands for "Strategic Lawsuit Against Public Participation."  *Metabolife Int'l Inc. v. Wornick,* 264 F.3d 882, 837 n.7 (9th Cir. 2001).

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

O.R.S. 31.150(2).

Once the defendant makes its initial showing, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(3). In determining whether the plaintiff has met this burden, the court considers the "pleadings and supporting and opposing affidavits stating the facts upon which the liability . . . is based." ORS 31.150(4). As the Oregon Court of Appeals has explained: "ORS 31.150(3) expressly shifts the burden of production of evidence onto the nonmoving plaintiff, and it requires a court to evaluate the evidence and draw a conclusion as to whether there is a probability that the plaintiff will prevail." *Or. Educ. Ass'n v Parks*, 253 Or. App. 558, 566, 291 P.3d 789 (2012). If plaintiff cannot meet this burden, his claim must be stricken. ORS 31.150(1).

## A.    Plaintiffs' claims arise out of actions covered by ORS 31.150(2).

Oregon's anti-SLAPP statute applies to "any claim" regardless of how it is denominated, as long as it arises from one of the statutory categories delineated in ORS 31.150(2). *Mullen v. Meredith Corp.*, 271 Or. App. 698, 705, 353 P.3d 598 (2015). As the California Supreme Court has held, under the analogous California anti-SLAPP statute,[3] the anti-SLAPP statute's "definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability." *Navellier v. Sletten*, 29 Cal. 4th 82, 92,

---

[3] The Oregon anti-SLAPP statute was modeled after California's, and Oregon courts look to California case law to inform their interpretation of Oregon's law. *Page v. Parsons*, 249 Or. App. 445, 461, 277 P.3d 609 (2012). *See also Accuardi v. Fredericks,* No. 3:13-cv-01825-ST, 2014 WL 848263, at *2 n.2 (D. Or. Mar. 4, 2014) ("Oregon's Anti-SLAPP statute is modeled after the California statute."); *Neumann v. Liles*, 261 Or. App. 567, 572 n.3, 323 P.3d 521 (2014) ("We look to California case law because Oregon's anti-SLAPP statute was 'modeled on California statutes'") (citation omitted).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

52 P.3d 703 (2002) (original emphasis). Courts in Oregon have applied the statute to a variety of causes of action, such as those asserted by plaintiff here. *See, e.g., Higher Balance*, 2008 WL 5281487 (claims for intentional interference with business relationships and prospective economic advantage subject to anti-SLAPP statute); *Gardner*, 2005 WL 3465349 (claims for intentional interference with economic relations and prospective economic advantage subject to anti-SLAPP statute); *Accuardi*, 2014 WL 848263 (false light, emotional distress, and intentional interference with economic relations).  Here, the anti-SLAPP statute applies to plaintiff's claims because:  (1) they arise from statements made in a public forum and/or from conduct in furtherance of free speech rights; and, (2) because they involve an issue of public interest.

      **1.**      **Plaintiff's claims arise from statements made in a public forum.**

      Plaintiff's claims are subject to the anti-SLAPP statute because they arise out of an "oral statement made, or written statement or other document presented, in a place open to the public or a public forum …."  ORS 31.150(2)(c).  Plaintiff alleges it has been injured by ConsumerAffairs' posting and refusal to post consumer reviews on its website, deceptive statements about those reviews made by ConsumerAffairs on its website, and the "publication of deceptively biased content" about plaintiff made by ConsumerAffairs on its website.  Compl. ¶ 1.  *See also* Compl. ¶ 26(a) (alleging injury based on ConsumerAffairs' "review-related representations" on its website), ¶ 30 (alleging injury based on "misrepresentation and deception" made by ConsumerAffairs on its website), ¶ 36(a) (alleging injury based on ConsumerAffairs' fraudulent representations and "word content" on its website), ¶ 41 (alleging injury based on false and defamatory representations made by ConsumerAffairs on its website).

      A website is clearly a public forum under the anti-SLAPP statute.  *See Accuardi* 2014 WL 848263 at *2 ("the Internet is accessible to anyone who choose to visit the hosting website and 'hardly could be more public.'") (quoting *Wilbanks v. Wolks*, 121 Cal. App. 4th 883, 895 (2004)); *Higher Balance*, 2008 WL 5281487 at *3 ("[w]ebsite forum pages allowing users to read and post comments free of charge constitute a public forum under the anti-SLAPP

statute."); *Neumann*, 261 Or. App. at 573-75 (affirming circuit court's holding that claims arising from online reviews were subject to SLAPP anti-statute). Therefore, plaintiff's claims satisfy the first part of the anti-SLAPP statute.

### 2. Plaintiff's claims arise from other conduct in furtherance of free speech rights.

Plaintiff's claims are also subject to the anti-SLAPP statute because they arise out "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech …." ORS 31.150(2)(d). As noted above, plaintiff alleges that defendants have engaged in deceptive conduct in order to "negatively portray Plaintiff to potential and existing customers" on the ConsumerAffairs' website. Compl. ¶ 1. The conduct about which plaintiff complains, however, is in furtherance of ConsumerAffairs' free speech rights – i.e., the publication of content on its website.[4] *See Stutzman v. Armstrong*, No. 2:13–CV–00116–MCE–KJN, 2013 WL 4853333, at *7 (E.D. Cal. Sep. 10, 2013) (alleged fraudulent and deceptive actions by author and publisher of book constituted conduct in furtherance of free speech rights under anti-SLAPP statute). Therefore, for this separate reason, plaintiff's claims satisfy the first part of the anti-SLAPP statute. *See DuBoff v. Playboy Ent. Intern., Inc.*, Civ. No. 06-358-HA, 2007 WL 1876513, at *6-*7 (D. Or. June 26, 2007) (researching and writing of article critical of plaintiff constituted conduct in furtherance of free speech rights under anti-SLAPP statute); *Gardner*, 2005 WL 3465349 at *4 (publication of consumer complaints about plaintiff's business constituted conduct in furtherance of free speech rights under anti-SLAPP statute); *Accuardi*, 2014 WL 848263 at *2 (critical blog post about plaintiff's telemarketing business constituted conduct in furtherance of free speech rights under anti-SLAPP statute).

---

[4] In addition, the conduct about which plaintiff complains – removing, manipulating, and changing the appearance of reviews – is a "traditional editorial function" subject to all the protections afforded publishers for speech. *Levitt v. Yelp! Inc.,* Nos. C–10–1321 EMC, C–10–2351 EMC, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011), *aff'd on other grds.,* 765 F.3d 1123 (9th Cir. 2014).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

3.    **The statements and conduct at issue involve a matter of public interest.**

There also can be no serious dispute that the statements and conduct of ConsumerAffairs about which plaintiff complains involve a matter of public interest. It is well settled that the term "public interest" has been broadly applied by both Oregon state and federal courts. *DuBof*, 2007 WL 1876513 at \*8. *See also Gardner*, 2005 WL 3465349 at \*5 ("[C]ourts have generally given Oregon's 'public issue' or 'public interest' concept a broad interpretation."); *Higher Balance*, \*5 (rejecting plaintiff's argument that Internet postings were of interest only to limited, definable portion of public). Similarly, under the analogous California anti-SLAPP statute, "[t]he definition of 'public interest' . . . has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). *See also Seelig v. Infinity Broadcasting, Co.* 97 Cal. App. 4th 798, 807 (2002) (criticism of contestant from reality television program "Who Wants to Marry a Millionaire" related to matter of public interest); *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011) (exhibition of reality television program *Basketball Wives: Los Angeles* involved a matter of public interest).

Here, plaintiff is a company with over two million customers in a highly regulated industry. Compl. ¶ 2. It complains about ConsumerAffair's posting (and removal) of reviews about consumer products and services, as well as ConsumerAffairs' statements about the relative value of its goods and services. *Id. ¶¶* 16-22. These are clearly matters of public interest. *See Gardner*, 2005 WL 3465349 at \*7 ("issues of consumerism, including complaints about products and services, are issues of public interest"). As the court noted in *Gardner*, consumer information "'when it affects a large number of persons, also generally is viewed as information concerning a matter of public interest [and] [c]ourts have recognized the importance of the public's access to consumer information.'" 2005 WL 3465349 at \*6 (quoting *Wilbanks v. Wolk*, 17 Cal. Rptr. 3d 497, 506-07 (2004 Cal. Ct. App. 2004)). *See also DuPont Merck Pharmaceutical Co. v. Superior Court*, 92 Cal. Rptr. 2d 755, 759 (Cal. Ct. App. 2000)

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

(statements comparing quality and effectiveness of drug products were made "in connection with a public issue" for purposes of anti-SLAPP statute); *Melaleuca, Inc. v. Clark*, 78 Cal. Rptr. 2d 627, 638 (Cal. Ct. App. 1998) (in context of claims for defamation and economic interference, "statements about the contents of [plaintiff's] product were a matter of public concern").

Therefore, because plaintiff's claims arise from statements made in a public forum and/or from conduct in furtherance of free speech rights, and because they involve an issue of public interest, its claims are subject to the provisions of the anti-SLAPP statute.

### B.    Plaintiff bears the burden of demonstrating a probability of success

Because plaintiff's claims arise out of conduct described in ORS 31.150(2), the burden shifts to plaintiff to demonstrate a probability it will prevail on its claims through the production of substantial evidence to support a prima facie case. ORS 31.150(3). For the reasons set forth below, plaintiff cannot meet this burden with respect to any of the claims at issue. Therefore, all of its claims should be stricken.[5]

## II.    PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF SUCCESS ON THE MERITS OF ITS CLAIMS.

Plaintiff's claims for its unlawful trade practices, intentional interference with prospective economic relations, RICO violations, and defamation must be stricken because plaintiff has not – and cannot – establish the essential elements of those claims. In addition, plaintiff's defamation claim must be stricken for the independent reason that defendants' conduct

---

[5] In addition, even if plaintiff's claims were not subject to being stricken under the anti-SLAPP statute, which they are, they should be dismissed under the standards of a Rule 12(b)(6) motion to dismiss. *See LaHodny v. 48 Hours, et al.*, No. 6:13–cv–02102–TC, 2015 WL 1401676, at *2 (D. Or. Mar. 24, 2015) (holding that court need not resort to review of evidence supporting plaintiff's prima facie case because plaintiff's claims failed under normal 12(b)(6) standard); *see also Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV F 09–2101 LJO MJS, 2011 WL 587357, at *3 (E.D. Cal. Feb. 9, 2011) ("A section 425.16 special motion to strike may be based on a defect in a complaint, including legal deficiencies addressable on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or a failure to support a stated claim with evidence, analogous to a Fed. R. Civ. P. 56 summary judgment motion.").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ᛫ (503) 778-5299 fax

is protected by Section 230 of the Communications Decency Act.  Finally, plaintiff's claims against defendant Carman must be stricken because it has failed to set forth any facts sufficient to establish Carman's individual liability for those claims.

### A.    Unlawful trade practices

Oregon's Unlawful Trade Practices Act is a consumer protection statute that protects consumers in consumer transactions but does not regulate relationships or conduct among businesses unless the plaintiff corporation is actually a consumer of defendant's products or services.  *Benson Tower Condominium Owners Ass'n. v. Victaulic Co.*, 22 F. Supp. 3d 1126, 1135-36 (D. Or. 2014).  As the court noted in *L & A Designs v. Xtreme ATVs, Inc.*, in dismissing plaintiff's UTPA claims:

> In this District, several courts have also ruled that the UTPA is limited to consumer actions.  *Oregon Laborers–Emp'r Health & Welfare Trust Fund v. Philip Morris, Inc*., 17 F. Supp. 2d 1170, 1180 (D. Or. 1998) ("Plaintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA."), *aff'd,* 185 F.3d 957 (9th Cir.1999); *CollegeNet, Inc. v. Embark.com, Inc.,* 230 F. Supp. 2d 1167, 1175 (D.Or.2001); *Volm v. Legacy Health Sys.,* 237 F. Supp. 2d 1166, 1175 (D. Or. 2002) (summary judgment granted because plaintiff was not a consumer of defendant's products); *Allegro Corp. v. Only New Age Music, Inc.,* No. 01-790–HU, 2002 U.S. Dist. LEXIS 27449, 2003 WL 23571745 (D.Or.2003); *Lanphere Enters. v. Jiffy Lube Int'l,* No. 01-1168-BR, 2003 U.S. Dist. LEXIS 16205 (D. Or. July 9, 2003).

No. 03:10–CV–627–HZ, 2012 WL 1532417, at *3-4 (D. Or. April 30, 2012).  *See also Slep-Tone Entm't Corp. v. Shenanigans Lounge*, No. 6:12–cv–1236–TC, 2013 WL 1768444, at *4 (D. Or. Feb. 22, 2013) ("Plaintiff has not alleged that it is a consumer of defendants' products and thus, I find that plaintiff lacks standing to maintain claims under the UTPA."), *recommendation adopted*, 2013 WL 1767727 (D. Or. April 20, 2013).

In this case, plaintiff does not allege that it is a "consumer" or that its alleged injuries arose as a result of a consumer transaction between it and ConsumerAffairs.  Rather, plaintiff claims that ConsumerAffairs' actions caused a "likelihood of confusion or misunderstanding"

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

among consumers viewing the reviews "of the goods and services of Consumer Cellular, and its competitor Jitterbug," Compl. ¶ 26(a), and/or that ConsumerAffairs disparaged "the goods, services, and/or business of Consumer Cellular," without any allegation that it is a consumer of *ConsumerAffairs*' goods or services. *Id.* ¶ 26(b). In other words, plaintiff argues that its business was damaged by ConsumerAffairs in connection with a proposed business transaction, not that it suffered any harm as a consumer. As the above authorities make clear, however, the UTPA does not apply to these allegations, even if true (which ConsumerAffairs denies). Therefore, this claim should be stricken.

**B.      Interference with prospective economic relations**

To support a claim for intentional interference with economic relations, plaintiff must demonstrate: (1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) through improper means or for an improper purpose, (5) causal effect, and (6) damages. *Uptown Heights Associates Ltd. v. Seafirst Corp.*, 320 Or. 638, 646, 891 P.2d 639 (1995). Here, plaintiff fails to identify *any* relationship that existed between itself and unnamed potential customers. On this basis, therefore, its claim should be stricken. *See LaHodny v. 48 Hours, et al.*, No. 6:13–cv–02102–TC, 2015 WL 1401676, at *5 (D. Or. Mar. 24, 2015) (striking intentional interference claim where plaintiffs did not identify any specific business relationship they expected); *FLIR Systems, Inc. v. Sierra Media, Inc.*, No. CV–10–971–HU, 2011 WL 1832806, at *7 (D. Or. May 10, 2011) (dismissing intentional interference claim where plaintiff failed to identify any prospective customers with whom it had a business relationship). *See also Evans v. Sirius Computer Solutions, Inc.*, No. 3:12–CV–46–AA, 2012 WL 1557294, at *3 (D. Or. May 1, 2012) (parties must have had a business relationship prior to alleged intentional interference). As the court explained in *FLIR*, the intent of the intentional interference tort:

> is to protect both parties to a prospective business relationship
> from a third party who would interfere. This is different from
> inducing a potential customer who has had no contact with the

Page 13 - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
DWT 28134255v4 0105455-000001                 1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> plaintiff, whether initiated by the consumer or the plaintiff, to
> purchase a competing product rather than plaintiff's product.

2011 WL 1832806, *7. Here, plaintiff has vaguely alleged that it "had and has a reasonable

prospective economic relationship with potential consumers interested in the consumers [sic]

which [sic] have clicked and continue to click on ConsumerAffairs review page for Consumer

Cellular, as established by Consumer's online click conversation rate track record." Compl.

¶ 30. This allegation concerning unspecified "potential consumers," is insufficient to satisfy

plaintiff's burden of establishing the elements of this tort.

     In addition, plaintiff has not – and cannot – allege that ConsumerAffairs knew of the

existence of any prospective business relationship with which it allegedly interfered. *See United

Employer Ben. Corp. v. Dept. of Ins. and Fin.*, 133 Or App 477, 487, 892 P.2d 722 (1995)

(interference tort requires that defendant must have known about plaintiff's prospective

relationship). On this separate ground, therefore, plaintiff's claim should be stricken. *See

LaHodny*, 2015 WL 1401676 at *5 (striking intentional interference claim where plaintiff failed

to allege defendants knew of any prospective business relations); *FLIR*, 2011 WL 1832806 at *7.

## C.    RICO

     To meet its burden of demonstrating a probability of prevailing on its RICO claim under

18 U.S.C. § 1962(c), plaintiff must present substantial evidence establishing: (1) conduct by

defendants, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, (5) causing

injury to its business. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361

(9th Cir. 2005). In addition, because plaintiff's RICO claim involves allegations of fraud, *see*

Compl. ¶ 36 (alleging wire fraud and extortion), those allegations must be pled with particularity

under Rule 9(b) of the Federal Rules of Civil Procedure, and must set forth "the time, place, and

manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty.

Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991). *See also Quantum

Technologies Partners II v. Altman Browning and Co.*, No. 08–CV–376–BR, 2009 WL 1795574,

at*1 (D. Or. June 23, 2009) (Rule 9(b) requires allegations of fraud to be stated "with

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax
DWT 28134255v4 0105455-000001

particularity"). Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotation omitted). Here, plaintiff falls woefully short of these requirements.

> **1.    Plaintiff cannot establish that defendants conducted a RICO enterprise.**

RICO liability does not exist unless each defendant has participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). To participate in a RICO enterprise, a defendant must have some role in directing the affairs of the enterprise. *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). Moreover, to state a RICO claim involving multiple defendants, a plaintiff must allege facts showing that *each* of the defendants conducted or participated in an enterprise through a pattern of racketeering activity. *See Dost v. Nw. Trustee Servs., Inc.*, No. 3:11–cv–00270–ST, 2011 WL 6794028, at *11 (D. Or. Dec. 21, 2011) (failure to identity "which defendant or defendants violated provisions" of RICO grounds for dismissal of claims); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006) (conclusory allegations that defendants "engaged in a laundry-list of purported predicate acts" insufficient to establish RICO claim).

As a leading RICO treatise has noted, in complaints that allege the participation of multiple defendants in the operation or management of an enterprise:

> Complaints frequently cast a broad net, naming unaffiliated defendants who are not factually alleged to have participated meaningfully in directing the enterprise's affairs. Conclusory, boilerplate allegations do not determine whether a defendant is properly named as a participant in an enterprise, much less whether the defendant operated or managed the enterprise. The complaint must contain factual allegations that each defendant was actually involved in directing the affairs of the enterprise; otherwise dismissal is appropriate.

Gregory P. Joseph, *Civil RICO* § 9C (2d ed. 2000).

Page 15 - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

Here, plaintiff alleges generally that "defendants" have engaged in racketeering activities, but does not specify any particular action by any specific defendant to support its claims. Notably, none of the paragraphs in the complaint identify *which* of the defendants, took *which* actions or made *which* statements, on *which date*, that proximately caused damages to plaintiff. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (dismissing RICO claim where plaintiff failed to provide time, place, or nature of alleged predicate acts). Plaintiff's generic pleading does not satisfy his burden of establishing the elements of his RICO claim. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (dismissing RICO claim where plaintiff did not attribute specific conduct to individual defendants); *Akers v. U.S.*, No. Civ. 01-1348-HU, 2002 WL 32512845, at *5 (D. Or. April 3, 2002) (dismissing fraud claim where plaintiff's allegations referred generally to "defendants" and did not identify specific acts of defendants). Therefore, on this ground, plaintiff's RICO claim should be stricken.

### 2.    Plaintiff cannot establish a "pattern" of racketeering activity.

In order to demonstrate a probability of prevailing on its RICO claim, plaintiff must also establish a "pattern" of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A pattern of racketeering requires at least two predicate acts that are related and that "amount to or pose a threat of continued criminal activity." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Here, plaintiff essentially complains of a single scheme allegedly used to coerce it to sign a contract to become an accredited member of ConsumerAffairs. *See* Compl. ¶ 36 (alleging that defendants engaged in wire fraud and extortion in order to compel plaintiff to pay money to become an accredited member). This is insufficient to demonstrate a pattern of racketeering activity. *See Medallion Television Ent., Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363-64 (9th Cir. 1987) (affirming dismissal of RICO claim where defendant's alleged misrepresentations were part of a single effort to fraudulently induce plaintiff to sign contract); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535-36 (9th Cir. 1992) (affirming dismissal of

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main ⋅ (503) 778-5299 fax

RICO claim where multiple acts were part of a single scheme allegedly designed to impoverish plaintiff); *Turner*, 362 F.3d at 1230 (affirming dismissal of RICO claim where defendants' alleged threats would cease once effort to collect debt was accomplished); *Pierce v. Citibank (South Dakota), N.A.*, 856 F. Supp. 1451, 1455 (D. Or. 1994) (dismissing RICO claim where alleged extortionate acts related to a single transaction).

Moreover, plaintiff does not identify any other "victim" or any continuing injuries from defendants' scheme, which is also fatal to its claim. *See Turner*, 362 F.3d at 1230 (despite mailing of "hundreds" of letters to other companies, plaintiff failed to establish continuity requirement of RICO where it did not demonstrate threat of continuing injury); *Buena Vista, LLC v. New Resource Bank*, No. C 10–01502 CW, 2011 WL 250361, at *3 (N.D. Cal. Jan. 26, 2011) (dismissing RICO claim where plaintiff did not identify other victims or threatened victims of alleged scheme); *Casablanca Prods. Inc. v. Pace Intern. Research, Inc.*, 697 F. Supp. 1563, 1569 (D. Or. 1988) (dismissing RICO claim where alleged fraud involved single victim). Therefore, plaintiff's RICO claim should be stricken on this ground as well.

### 3.      Plaintiff cannot establish any racketeering activity

Finally, plaintiff's RICO claim should also be struck because it cannot establish the required predicate acts of either wire fraud or extortion. *See Smith v. U.S. Bank, N.A.*, Civ. No. 10–3077–CL, 2011 WL 7628515, at *8 (D. Or. Oct. 26, 2011) (to demonstrate "racketeering activity" under RICO plaintiff must establish certain "predicate acts" that are chargeable as offenses under state or federal law).

### a.      Wire fraud

The essential elements of wire fraud are (1) the formation of a scheme to defraud; (2) use of the U.S. wires to further the scheme; and (3) specific intent to defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986). Moreover, a plaintiff must set forth "what is false or misleading about [an allegedly fraudulent] statement, and why it is false." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). *See also*

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Lorenz v. Deutsche National Trust Co.*, No. 3:15–cv–680–SI, 2015 WL 5813174, at \*4-\*5 (D. Or. Oct. 5, 2015) (dismissing plaintiff's RICO claims where plaintiff failed to identify "who, what, when, where, and how of the [alleged] misconduct" as well as what was false or misleading about allegedly fraudulent statement and why) (citation and internal quotation marks omitted).  Here, as noted above, not only does plaintiff fail to specify how each defendant was involved in the fraudulent conduct at issue, plaintiff does not allege that any statements made to it by ConsumerAffairs were false.  Indeed, plaintiff claims that it refused to enter into a contract with ConsumerAffairs because it "did not believe the coercive practices of ConsumerAffairs were just."  Compl. ¶ 12.  Thus, plaintiff cannot demonstrate defendants' specific intention to defraud or deceive it.  *See Sanville v. Bank of American Nat. Trust & Savings Ass'n*, 18 Fed. Appx. 500, 501 (9th Cir. 2001) (affirming dismissal of RICO claim where plaintiff failed to describe scheme in which defendants targeted deceptions "specifically and intentionally" at it).

In addition, plaintiff lacks standing to bring a RICO claim based on wire fraud.  To have standing to assert such a claim, plaintiff must demonstrate that the alleged RICO violation "led directly" to its injuries.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  Thus, in *Anza*, the Supreme Court held that plaintiffs could not maintain a RICO claim where defendant's alleged fraudulent statements were made to the New York tax authority and not to plaintiff, even though plaintiff claimed it was injured by the lower prices charged by defendant as a result of its fraud.  547 U.S. at 457.  Similarly, in *Sybersound Records, Inc. v. UAV Corp.*, the Ninth Circuit held that plaintiff lacked standing to bring a RICO claim because defendants' alleged fraudulent acts were directed at consumers, and even though plaintiff claimed its business was injured as a result, the alleged violation was not the proximate cause of its injury.  517 F.3d 1137, 1148-49 (9th Cir. 2008).  Here, plaintiff claims that consumers were deceived by defendants' "scheme of misrepresentation," Compl. ¶ 22, but, as in *Anza* and *Sybersound,* its alleged injuries flow from the alleged competitive harm it claims it suffered.  *See* Compl. ¶ 22(g) (alleging that defendants'

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

alleged misrepresentations gave its competitor, Jitterbug, a "lopsided competitive advantage").

Therefore, plaintiff lacks standing to bring this claim.

### b.     Extortion

Under Oregon law, the crime of "theft by extortion" consists of compelling another

person to part with property through the use of fear.  ORS 164.075.  In general, however, using

threats of economic harm to obtain property is not considered extortion where the alleged

extortioner has a legitimate claim to the property.  *United States v. Enmons,* 410 U.S. 396, 400

(1973).  Indeed, "[t]he fear of economic loss is a driving force of our economy that plays an

important role in many legitimate business transactions."  *United Broth. Of Carpenters and*

*Joiners of Am. v. Building and Const. Trades Dept.*, 770 F.3d 834 (9th Cir. 2014) (citation and

internal quotation marks omitted).  Thus, threatening economic harm to induce a person to pay

for a legitimate service is not extortion.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133-34 (9th Cir.

2014).  In *Levitt*, the Ninth Circuit rejected plaintiff's claim that defendant Yelp had committed

extortion by allegedly threatening to post negative reviews of businesses, remove positive

reviews, and change the order of reviews if business owners refused to purchase advertising.  *Id.*

at 1133.  Even if plaintiffs' allegations were true, the court held, plaintiffs had no pre-existing

right to have positive reviews appear on Yelp's website, nor were the services offered by Yelp

worthless.  765 F.3d at 1133.  Similarly, in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)

the Ninth Circuit rejected plaintiff's claim that defendants' settlement demands threatening

costly lawsuits constituted "extortion" under the law.  *Id.* at 939-40.  While defendants' threats

might have induced "fear" in plaintiff, the court held, the use of fear was not wrongful.  *Id.* at

940.

Here, while plaintiff claims defendants committed extortion by manipulating (and

threatening to manipulate) the posting of reviews on the ConsumerAffairs' website, Compl.

¶ 36(b), plaintiff has no pre-existing right to the publication of positive reviews or the removal of

negative reviews from the website.  *See Levitt*, 765 F.3d at 1134 (Yelp was not liable for

Page 19 - DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE

extortion where it was not "independently wrongful for Yelp to post and arrange actual user reviews on its website as it sees fit"). Nor can plaintiff argue that the service provided by ConsumerAffairs was worthless. While defendants might be accused of "hard bargaining," their conduct does not constitute actionable extortion under the law. *Id.*

### D.    Defamation

The gist of plaintiff's defamation claim is that defendants did not post or removed positive reviews of its business with high satisfaction ratings while removing negative reviews of its competitor, Jitterbug. *See* Compl. ¶¶ 16-22. Plaintiff fails to identify any positive review that was not posted, however, except to speculate that because there were eight 5-star reviews of its business between October 26, 2013 and April 15, 2014, the fact that there was only one 5-star review between April 15, 2015 and August 19, 2014 means ConsumerAffairs excluded other 5-star reviews. Compl. ¶ 17. Not only is this false, *see* Carman Dec. ¶ 9, it is exactly the type of speculative pleading precluded by the Supreme Court's decisions in *Iqbal* and *Twombly*, and it fails to establish sufficient facts to support plaintiff's claim that ConsumerAffairs defamed it by intentionally omitting positive reviews of its business. *See Levitt*, 765 F.3d at 1135 (under pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) plaintiffs failed to allege sufficient facts to support claim that defendant authored negative reviews at issue). As to plaintiff's claim that ConsumerAffairs removed positive reviews, the review dated July 19, 2015 that was updated to 5-stars, *see* Compl. ¶¶ 18 and 21(c), was removed at the customer's request, *see* Carman Dec. ¶ 9. The other two positive reviews identified by plaintiff, *see* Compl. ¶¶ 21(a) and (b), were removed because they were determined to be spam. *Id.* Plaintiff's allegation that ConsumerAffairs only counted 165 out of 314 reviews in calculating its satisfaction rating, *see* Compl. ¶ 22(d), is not defamatory in the first instance,[6] and fails to recognize that the uncounted reviews were older than one year, which

---

[6] Once again, plaintiff presumes without any factual support that the omitted reviews were positive.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

ConsumerAffairs does not count for *any* business in calculating satisfaction ratings.  Carman Dec. ¶¶ 7, 9.  Finally, plaintiff's claim that the phrase "Complaints and Reviews" is defamatory while the phrase "Reviews and Complaints" is not, *see* Compl. ¶ 22(f) is simply nonsensical.  No reasonable consumer would think the number that proceeds the phrase refers only to the first word, as plaintiff claims, because the conjunction "and" clearly signifies that it refers to both.

In addition, even if plaintiff's factual allegations had merit, which they do not, it is a matter of black letter law that a statement of opinion "'that cannot reasonably be interpreted as stating actual facts'" cannot give rise to a defamation claim.  *Hickey v. Settlemier*, 141 Or. App. 103, 110, 917 P.2d 44 (1996) (quoting *Milkovitch v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).  Here, plaintiff complains that it was defamed by alleged misrepresentations about its "satisfaction rating" made by ConsumerAffairs.  *See* Compl. ¶¶ 16-22.  The "satisfaction rating" displayed by ConsumerAffairs is an average of the number of "stars" awarded to companies by consumers.  Carman Dec. ¶ 6.  The number of stars a consumer chooses to award a company ranges from "very dissatisfied with the experience" (1-star) to "would recommend to a friend" (5-star).  *Id.*  It necessarily reflects a consumer's own evaluation of, and experience with, a company's product or service, which varies from consumer to consumer depending on his individual experience.  Thus, a "satisfaction rating" does not constitute a provably false statement of fact, and cannot support a defamation claim.  *See, e.g.*, *Themed Restaurants, Inc. v. Zagat Survey, LLC,* 21 A.D.3d 826, 827 (N.Y. App. Div. 2005) (numerical survey that rated restaurants based on summary of contributions from individual consumers was constitutionally protected opinion); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 870 (8th Cir. 2005) (system that rated air charter service providers "on a scale of 1 [to] 10" based on safety and other data was "ultimately a subjective assessment,  not an objectively verifiable fact" and therefore not actionable as defamation), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *ZL Technologies, Inc. v. Gartner, Inc*, 709 F. Supp. 2d 789, 796–801 (N.D. Cal. 2010) (plaintiff's ranking as a "Niche Player," was

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

subjective opinion not objective fact and not actionable as defamation); *Browne v. Avvo Inc.* 525 F. Supp. 2d 1249, 1252 (W.D. Wash. 2007) (comparative numerical ratings for attorneys were opinions and not actionable as defamation); *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 243 (Mo. Ct. App. 2011) ("BBB's 'C' rating of [the plaintiff] is not sufficiently factual to be susceptible of being proved true or false"); *Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.*, No. 01–12–00990–CV, 2013 WL 3716693, at *8 (Tex. Ct. App. July 16, 2013),  ("the 'F' rating itself cannot be defamatory because it is the Bureau's self-described 'opinion' of the quality of [the plaintiff's] services, which lacks a high degree of verifiability").  Thus, on this separate ground, plaintiff's defamation claim should be struck.

Finally, defendants are immune from liability for defamation claims such as those asserted by plaintiff here under section 230 of the Communications Decency Act.  In section 230, Congress specifically provided that Internet websites that host content posted by third parties cannot be liable for claims arising from that content.  47 U.S.C. § 230(c)(1).  Thus, under section 230, "lawsuits seeking to hold [an Internet website] liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  *See also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("Under §230(c) . . . so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process.").  As the court held in *Levitt v. Yelp!*, this immunity applies even where the motive for vetting or editing a review is alleged to be improper:

> [F]inding a bad faith exception to immunity under § 230(c)(1) could force Yelp to defend its editorial decisions in the future on a case by case basis and reveal how it decides what to publish and what not to publish.  Such exposure could lead Yelp to resist filtering out false/unreliable reviews (as someone could claim an improper motive for its decision), or to immediately remove all negative reviews about which businesses complained (as failure to

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> do so could expose Yelp to a business's claim that Yelp was
> strong-arming the business for advertising money).

*Levitt v. Yelp! Inc.*, 2011 WL 5079526 at *7-9 (N.D. Cal. Oct. 26, 2011), *aff'd on other grds.*,

765 F.3d 1123 (9th Cir. 2014).

      Here, ConsumerAffairs' decisions about which reviews to post, and how to order and

categorize those reviews, are immune from liability for defamation under section 230.  *See*

*Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (Section 230 applies even where website

takes "some affirmative steps to edit the material posted"); *Fair Housing Council of San*

*Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1173 at n.36  (9th Cir. 2008)

("filtering for obscenity or 'spam'" is a "kind of minor editing and selection" that does not defeat

Section 230 immunity); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 985-86

(10th Cir. 2000) (rejecting argument that service provider's deletion of some, but not all,

inaccurate data about plaintiff  defeats section 230 immunity); *Shiamili v. The Real Estate*

*Group*, 952 N.E.2d 1011, 1019 (N.Y. 2011) (dismissing claims under section 230 despite

allegations that defendants selected content for publication, moved content to a stand-alone post,

and added heading, sub-heading, and illustration to content); *Donato v. Moldow*, 865 A.2d 711,

725-26 (N.J. Super. Ct. App. Div. 2005) (holding Section 230 protected forum operator who

regularly deleted and censored user posts); *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d

450, 475-76 (E.D.N.Y. 2011) (dismissing claims under section 230 despite allegations that

defendants invited the submission of negative reviews and altered the manner in which the

reviews were displayed); *Hill v. StubHub, Inc.*, 727 S.E.2d 550, 560 (N.C. Ct. App. 2012) *review*

*denied,* 736 S.E.2d 757 (N.C. 2013) (dismissing claims under section 230 despite allegations that

defendant "encouraged" and "controlled" publication of unlawful material).

      Therefore, on this additional ground, plaintiff's defamation claim should be struck.

### E.      Claims Against Defendant Carman

      It is axiomatic that the corporate form protects shareholders and officers from liability

except in exceptional circumstances.  *McKesson HBOC, Inc. v. New York State Common*

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Retirement Fund, Inc.*, 339 F.3d 1087, 1094 (9th Cir. 2003). Here, plaintiff fails to set forth any facts sufficient to establish defendant Carman's individual liability for any of the claims it asserts against him. Indeed, after naming him as a defendant, and alleging "on information and belief" that "Carman established a new business model when he acquired the business," Compl. ¶ 3, *see also id.* ¶ 11, plaintiff makes no further specific reference to Carman's actions in its complaint.[7] Therefore, on this independent ground, the claims against Carman should be stricken.[8] *See O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (dismissing claims against President and Vice President of company where plaintiff failed to establish their active and direct participation in the tortious conduct at issue); *Joe Hand Promotions, Inc. v. Holmes*, 2015 WL 5144297, at *5 (D. Or. Aug. 31, 2015) (dismissing claims against business owner where plaintiff failed to allege his active participation in the violations at issue); *Wahluke Produce, Inc. v. Guerra Mktg. Int'l*, No. 1:11–cv–1981 LJO–BAM, 2012 WL 1601876, at *9 (E.D. Cal. May 7, 2012) (dismissing claims against officers of corporation where allegations were insufficient to establish personal liability).

---

[7] Carman also did not "acquire" the business as plaintiff alleges. *See* Carman Decl. ¶ 1 ("I do not have a majority ownership in either company.").

[8] Plaintiff's complaint also fails basic pleading standards under Rule 8(a) of the Federal Rules of Civil Procedure because it fails to allege anything more than mere conclusory statements about Carman's actions. *See Calloway v. Scribner*, No. 1:11–CV–00803 DLB, 2011 WL 5975784, at *8 (E.D. Cal. Nov. 29, 2011) (dismissing complaint where plaintiff failed to identify any specific conduct by the named individual defendants) (citing *Iqbal,* 129 S.Ct. at 1949-50).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court grant its special motion to strike the Complaint, enter judgment in its favor and against plaintiff, and award to defendants their costs and attorneys' fees.

DATED this 16th day of October, 2015.

**DAVIS WRIGHT TREMAINE LLP**


By  s/ Duane A. Bosworth
  DUANE A. BOSWORTH, OSB #825077
  duanebosworth@dwt.com
  TIM CUNNINGHAM, OSB #100906
  timcunningham@dwt.com
  Telephone: (503) 241-2300
  Facsimile: (503) 778-5299

  CAMERON STRACHER (admitted pro hac vice)
  cam@stracherlaw.com
  4 New York Plaza, 2d Floor
  New York, NY 10004
  Telephone:  (212) 743-6513
  Facsimile:  (646) 810-3089

  Attorneys for Defendants

DWT 28134255v4 0105455-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax