**Thomas R. Rask, III**, OSB No. 934031
trask@kelrun.com
**Robert B. Lowry**, OSB No. 852751
rlowry@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill St., Suite 600
Portland, OR  97204-1329
Telephone:  503/222-3531
Fax:  503/227-2980
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CONSUMER CELLULAR, INCORPORATED**, an Oregon corporation, | Case No.: 3:15-cv-01908-PK |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' ORS 31.150 SPECIAL MOTION TO STRIKE** |
| v. | |
| **CONSUMERAFFAIRS.COM, INC.**, a Nevada corporation; **CONSUMERS UNIFIED, LLC**, a Nevada limited liability company; and **DAVID ZACHARY CARMAN**, | **Request for Oral Argument** |
| Defendants. | |

Response to ORS 31.150 Special Motion to Strike

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Error! No document variable supplied.

Table of Contents

# I. FACTS .......................................................................................................................... 1

# II. ARGUMENT ................................................................................................................ 2

A.  The Anti-SLAPP Statute should not be Applied in Federal Court. .................................... 2

B.  The Anti-SLAPP Statute is Inapplicable to Federal Causes of Action (i.e. RICO)............. 2

C.  Defendants' motion should be denied both because Consumer Cellular's laims include allegations of deceptive nondisclosure and extortionate actions distinguishable from protected speech covered by the anti-SLAPP statute, and because plaintiff has presented prima facie evidence to support its claims. ............................................................................................... 3

   **1.  Plaintiff's first, second, and third claims include deceptive nondisclosure and extortionate actions, distinguishable from protected speech covered by the anti-SLAPP statute.** ............................................................................ 3

   **2.  Defendants' motion should be denied because plaintiff has presented prima facie evidence for its claims.** ............................................................. 5

    **a.  Plaintiff has presented substantial evidence to support a prima facie claim for violations of the Unlawful Trade Practices Act.** ..................................... 6

    **b.  Plaintiff has presented prima facie evidence to support the claim for intentional interference with prospective economic relations.** ....................... 10

    **c.  Consumer Cellular's RICO claim is not subject to the anti-SLAPP motion, but for the record the claim is well pled.** .................................. 15

      **(1)  Consumer Cellular has sufficiently pled multiple acts of wire fraud against each Defendant.** .................................................. 15

      **(2)  Consumer has plead actionable extortion under ORS 164.075.** .................. 19

      **(3)  Consumer Cellular has pled a pattern of racketeering activity.** .................. 21

      **(4)  Consumer Cellular has adequately pled that each of the Defendants has participated in the management of the alleged alternative RICO enterprises.** .......................................................... 22

      **(5)  Consumer Cellular's pleading satisfies RICO's standing requirement under Bridge.** ................................................... 22

    **d.  Plaintiff has presented substantial evidence to support a prima facie claim for defamation.** ...................................................................... 23

**Response to ORS 31.150 Special Motion to Strike**                    **Page i**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

**(1)    Defendants' statements were untrue and defamatory.**.................................... 24

**(2)    Defendant published the defamatory material.**................................................. 27

**(3)    The defamatory statements were defamatory per se and resulted in special harm to Plaintiff.** ................................................. 28

**(4)    It is improper for Defendants to raise the affirmative defense of immunity at this stage and, even if the Court were to consider it, immunity does not apply here.** .................................................................. 28

D.    Plaintiff's claims against Defendant Carman are well-pled. ............................................. 31

E.    Plaintiff should be allowed to conduct discovery if the court finds that it has not presented prima facie evidence. ................................................................. 33

**III. CONCLUSION** ................................................................. 34

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

## Cases

*Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015) .......................................... 2

*Accuardi v. Fredericks*,
2014 WL 848263 (D. Or. Mar. 4, 2014) .................................................................. 5

*Allen v. Hall*,
328 Or. 276 (1999) .......................................................................................... 14

*Allwaste v. Hecht*,
65 F.3d 1523 (1995) ......................................................................................... 27

*Altamont Summit Apts. LLC v. Wolff Props. LLC*,
2002 U.S. Dist. LEXIS 2761, at *14 (D. Or. Feb. 13, 2002) .................................. 39

*Anza v. Ideal Steel Supply*,
547 U.S. 451 (2006) .......................................................................................... 28

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ............................................................................. 36

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ............................................................................. 19, 22, 28, 29

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*,
448 F. Supp. 2d 1172 (C.D. Cal. 2006) .................................................................. 3

*Cortez v. Nacco Material Handling Group, Inc.*,
356 Or. 254 (2014) ........................................................................................... 38

*Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85 (1977) ................................... 7

*Douglas Med. Ctr. LLC v. Mercy Med. Ctr.*,
203 Or. App. 619 ............................................................................................. 13

*Evans v. Sirius Computer Solutions, Inc.*,
No. 3:12–CV–46–AA, 2012 WL 1557294, at *3 (D. Or. May 1, 2012) ..................... 17

*Fair Hous. Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ............................................................................. 36

*FLIR Systems, Inc. v. Sierra Media, Inc.*,
No. CV–10–971–HU, 2011 WL 1832806 (D. Or. May 10, 2011) .......................... 17

*Gardner v. Martino*,
2005 WL 3465349 (D. Or. Sep. 19, 2005) ............................................................. 5

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
63 F. Supp. 2d 1127 (N.D. Cal. 1999) .................................................................... 3

*Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*,
129 Or. App. 206 (1994) ..................................................................................... 9

**Response to ORS 31.150 Special Motion to Strike**                    **Page iii**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*,
   322 Or. 406 (1995).......................................................................................... 9

*H. J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989)................................................................................... 26, 27

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ............................................................................ 3

*Hinds v. Paul's Auto Werkstatt, Inc.*,
   107 Or. App. 63 (1991)..................................................................................... 7

*In re Bah*,
   321 B.R. 41(B.A.P. 9th Cir. 2005)..................................................................... 3

*Investigators, Inc. v. Harvey*,
   53 Or App 586, 633 P2d 6 (1981)..................................................................... 7

*LaHodny v. 48 Hours, et al.*,
   No. 6:13–cv–02102–TC, 2015 WL 1401676, at *5 (D. Or. Mar. 24, 2015) ............ 16

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) .................................................................... 23, 24

*Luisi v. Bank of Commerce*,
   252 Or 271, 449 P2d 441 (1969) ..................................................................... 14

*Makaeff v. Trump Univ., LLC*,
   736 F.3d 1180 (9th Cir. 2013) ........................................................................... 3

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) ................................. 2

*McGanty v. Staudenraus*,
   321 Ore. 532, 901 P.2d 841 (1995).................................................................. 13

*McPhee Elec. Ltd., LLC v. Konover Constr. Corp.*,
   2009 Conn. Super. LEXIS 3110, 2009 WL 4846555 (Conn. Super. Ct. Oct. 22, 2009).......... 26

*Metabolife Int'l v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .......................................................................... 40

*National Union Fire Ins. Co. v. Starplex Corp.*,
   220 Or. App. 560 (2008).......................................................................... 29, 34

*Neumann v. Liles*,
   261 Or. App. 567 (2014).................................................................. 4, 29, 35, 37

*Newcal Indus. V. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008), *cert. denied* 557 U.S. 903 (2009)................... 22, 23, 29

*People v. Dioguardi*,
   8 N.Y.2d 260 (1960) ....................................................................................... 25

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)........................................................................................ 28

**Response to ORS 31.150 Special Motion to Strike**                    **Page iv**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*Ron Tonkin Gran Turismo v. Wakehouse Motors,*
46 Or App 199, 611 P2d 658 ............................................................... 14

*Roommates.com, LLC,*
521 F.3d at 1172 ................................................................................ 36

*Sanford v. MemberWorks, Inc.,*
625 F.3d 550, 557 (9th Cir. 2010) ..................................................... 19

*Sanville v. Bank of American Nat. Trust Savings Ass'n,*
18 Fed. Appx. 500 (9th Cir. 2001) ..................................................... 22

*Schwern v. Plunkett,*
2014 U.S. Dist. LEXIS 92310, *7 (D. Or. Apr. 22, 2014) ........... 6, 7, 32

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393 (2010) ........... 2

*State v. Nyhuis,*
251 Or. App. 768 (2012) .................................................................... 25

*State v. Perez,*
147 Conn. App. 53 (2013) .................................................................. 26

*Straube v. Larson,*
287 Or. 357 (1979) ............................................................................ 13

*Tubra v. Cooke,*
233 Or. App. 339 (2010) .................................................................... 30

*Turner v. Cook,*
362 F.3d 1219 (9th Cir. 2004) ........................................................... 27

*United States v. Woods,*
335 F.3d 993 (9th Cir.); *cert. denied,* 540 U.S. 1025 (2003) ............. 20

*Wampler v. Palmerton,*
250 Or. 65 (1968) .............................................................................. 39

*Warfield v. Gardner,*
346 F. Supp. 2d 1033 (D. Ariz. 2004) ............................................... 25

Wool v. Tandem,
818 F.2d 1433 (9th Cir. 1987). ...................................................... 21, 39

*Young v. Davis,*
259 Or. App. 497 (2013) ............................................................. 6, 7, 35

**Statutes**

18 U.S.C § 1961(4) ............................................................................ 15

18 U.S.C. § 1343 ............................................................................... 16

18 U.S.C. § 1962 (d) .......................................................................... 15

18 U.S.C. § 1964(c) ........................................................................... 15

**Response to ORS 31.150 Special Motion to Strike**                    **Page v**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

18 U.S.C. §§ 1962 (c) ............................................................................................ 15

18 U.S.C.S § 1951(b)(2) ........................................................................................ 19

47 U.S.C. § 230(c)(1) ............................................................................................ 29

A.R.S. § 13-1804A(3),(8) ..................................................................................... 20

Cal. Pen. Code § 518 ............................................................................................. 19

Conn. Gen. Stat. § 53a-119(5) .............................................................................. 21

Conn. Gen. Stat. § 53a-119(5)(B) ......................................................................... 21

NY CLS Penal § 135.60 ........................................................................................ 20

of FRCP 9(b) ......................................................................................................... 32

ORS § 646.605 ........................................................................................................ 8

ORS § 646.605(4) ................................................................................................ 6, 7

ORS § 646.605(6)(a) ..................................................................................... 7, 8, 10

ORS § 646.608 ...................................................................................................... 6, 8

ORS § 646.608(1)(b) ............................................................................................... 8

ORS § 646.608(1)(d) ............................................................................................... 8

ORS § 646.608(1)(e) ............................................................................................... 9

ORS § 646.608(1)(h) ............................................................................................ 7, 9

ORS § 646.638 .................................................................................................. 6, 7, 9

ORS 164.005(5) .................................................................................................... 20

ORS 164.075 ......................................................................................................... 19

ORS 31.150 ................................................................................................. 5, 28, 29

ORS 31.150(2) ..................................................................................................... 3, 4

ORS 31.152(2). ..................................................................................................... 33

**Rules**

Rule 56(b) ............................................................................................................. 33

Rule 9(b) ......................................................................................................... 16, 22

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Defendants filed a Special Motion to Strike solely under ORS 31.150, Oregon's anti-SLAPP statute.  Defendants' Motion should be denied for the following reasons:

(1) Oregon's anti-SLAPP statute procedural rule should not be applied in federal court;

(2) The anti-SLAPP statute is inapplicable to federal causes of action (i.e. RICO);

 (3) Plaintiff's first, second, and third claims include deceptive nondisclosure and extortionate actions, distinguishable from protected speech covered by the anti-SLAPP statute;

(4) Plaintiff has presented prima facie evidence for its claims; and

(5) Under Ninth Circuit authority, Rule 56(b) requires discovery before an anti-SLAPP motion may be granted for lack of prima facie evidence.

Plaintiff relies on the record on file herein, including the Complaint, the Declarations of John S. Marick, Brian E. Hepner, Dominic Artero, Robert B. Lowry and Mike Strain, each of which contain exhibits, and the following points and authorities.

## I. FACTS

ConsumerAffairs.com purports to be a consumer advocacy organization dedicated to helping consumers make decisions about purchasing products and services by providing an unbiased consumer review posting website among other things.  Instead, the Defendants have since at least the beginning of January 2014 operated ConsumerAffairs.com using a business model that involves a deceptive scheme to negatively manipulate online consumers interested in reviewing the products and services of Plaintiff Consumer Cellular Incorporated (Plaintiff or Consumer Cellular) (and others).  They have done so in an attempt to extort large fees to help repair the business disparagement Defendants continue to intentionally cause Consumer Cellular. Consumer Cellular has been injured in its business in excess of $5,000,000 in lost online sales and otherwise as a result of the Defendants' scheme.

**Response to ORS 31.150 Special Motion to Strike**                    **Page 1**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Because of the nature of the anti-SLAPP motion, which potentially requires presentation of prima facie evidence for some of Plaintiff 's claims, and because all of the allegations that underlie the claims are important in responding to the motion, Plaintiff refers the Court to an annotated copy of Plaintiff's Complaint (referred to herein as "AC") attached as Exhibit 17 to the Declaration of Robert B. Lowry.  Plaintiff's allegations are annotated in the AC with references to the various Declarations and exhibits referenced above which provide evidentiary support for the factual allegations.  <u>The references below to the annotated Complaint are made by the designation "AC" along with the number of the paragraph in the complaint where both allegations and detailed evidentiary references are located</u>.

## II.  ARGUMENT

**A.    The Anti-SLAPP Statute should not be Applied in Federal Court.**

Consumer Cellular opposes application of Oregon's anti-SLAPP procedure because it conflicts with federal procedural rules for the reasons addressed in:  (1) *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); (2) *Abbas v. Foreign Policy Group, LLC,* 783 F.3d 1328, 1337 (D.C. Cir. 2015) (relying on *Shady Grove*);  (3) Chief Judge Kozinski in *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 273 (9th Cir. 2013) (Kozinski, C.J. concurring) where he said the matter should be reviewed and negated en banc; and (4)  Judge Watford in *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1189-90 (9th Cir. 2013) (Watford, J. dissenting from denial of rehearing en banc).

**B.    The Anti-SLAPP Statute is Inapplicable to Federal Causes of Action (i.e. RICO).**

The Ninth Circuit has held that a "state anti-SLAPP statute does not apply to federal law causes of action."  See *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010), where the court reasoned that the Erie doctrine rationale for state law claims is inapplicable to federal law

**Response to ORS 31.150 Special Motion to Strike**                                                                 **Page 2**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

claims (Lanham Act), citing *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F.

Supp. 2d 1172, 1180 (C.D. Cal. 2006) (inapplicable to RICO and Clayton Act claims).  *See also*

*In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("anti-SLAPP statute may not be applied to

matters involving federal questions"); and *Globetrotter Software, Inc. v. Elan Computer Group,*

*Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999).  Defendants' frivolous attempt at an anti-

SLAPP motion against Consumer Cellular's federal RICO claim should be denied.

   **C.**    **Defendants' motion should be denied both because Consumer Cellular's laims include allegations of deceptive nondisclosure and extortionate actions distinguishable from protected speech covered by the anti-SLAPP statute, and because plaintiff has presented prima facie evidence to support its claims.**

       The Oregon Court of Appeals recently clarified Oregon's "two-step burden-shifting

process" for an ORS 31.150 special motion to strike.  *Neumann v. Liles*, 261 Or. App. 567, 572

(2014).  First, a court must "determine whether the defendant has met its initial burden to show

that the claim against which the motion is made arises out of one or more protected activities

described in ORS 31.150(2).  Second, if the defendant meets that burden, the court must

determine whether the plaintiff has established that there is a probability that the plaintiff will

prevail on the claim by presenting substantial evidence to support a prima facie case."  *Id.*

(internal citations omitted).  Defendants' motion fails at both steps of the analysis.

     **1.**    **Plaintiff's first, second, and third claims include deceptive nondisclosure and extortionate actions, distinguishable from protected speech covered by the anti-SLAPP statute.**

       Oregon's anti-SLAPP statute requires Defendants to first show that Plaintiff's claims

arise out of one or more of the following:

> (a)  Any oral statement made, or written statement or other
> document submitted, in a legislative, executive or judicial
> proceeding or other proceeding authorized by law;
> (b)  Any oral statement made, or written statement or other

**Response to ORS 31.150 Special Motion to Strike**           **Page 3**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

document submitted, in connection with an issue under
consideration or review by a legislative, executive or judicial body
or other proceeding authorized by law;
(c)  Any oral statement made, or written statement or other
document presented, in a place open to the public or a public
forum in connection with an issue of public interest; or
(d)  Any other conduct in furtherance of the exercise of the
constitutional right of petition or the constitutional right of free
speech in connection with a public issue or an issue of public
interest.

ORS 31.150(2).  Defendants cannot make such a showing with respect to Plaintiff's first, second,

or third claims for relief to the extent that those claims include deceptive nondisclosure and

extortionate actions, distinguishable from protected speech.  Central to Plaintiff's claims for

violations of the Unlawful Trade Practices Act, intentional interference with prospective

economic relations, and violations of RICO are extortionate conduct, Defendants' stifling of

positive reviews, and deceitful and manipulative nondisclosure of information which misleads

online consumers.

Defendants attempt to conflate the issues by relying on a number of other cases related to

the posting of consumer complaints.  Defendants' ORS 31.150 Special Motion to Strike, at 9,

citing *Gardner v. Martino*, 2005 WL 3465349 (D. Or. Sep. 19, 2005), *Accuardi v. Fredericks*,

2014 WL 848263 (D. Or. Mar. 4, 2014).  However, unlike in those cases, Plaintiff's claims are

not based on the content of any consumer complaint or review published on Defendants'

website.

As Defendants' acknowledge, the purpose of Oregon's anti-SLAPP statute is to "protect

individuals from meritless, harassing lawsuits whose purpose is to chill protected expression."

*Gardner*, 2005 WL 3465349, at *2.  Consistent with the goals of the statute, Plaintiff's claims

are premised on the idea that consumers should be protected from deceit and are entitled to have

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

their posted reviews freely expressed without suppression or manipulated by Defendants because Plaintiff has chosen not to pay Defendants' requested fee. Defendants' conduct has not been "in furtherance of" the constitutional right of free speech, as they contend. To the contrary, Defendants' conduct has inhibited free speech rights.

2.    **Defendants' motion should be denied because plaintiff has presented prima facie evidence for its claims.**

To the extent Defendants meet their burden, Plaintiff needs only present substantial evidence to support a prima facie claim. *Young v. Davis*, 259 Or. App. 497, 508 (2013) ("the statutory text indicates that the presentation of substantial evidence to support a *prima facie* case is, *in and of itself*, sufficient to establish a probability that the plaintiff will prevail"). As this Court has stated, "the fact that the defendant may present substantial evidence to the contrary is irrelevant to determining whether the plaintiff has met his burden" and the court is required to interpret the parties' respective evidentiary proffers in the light most favorable to" the non-moving party. *Schwern v. Plunkett*, 2014 U.S. Dist. LEXIS 92310, *7 (D. Or. Apr. 22, 2014) (Papak, J.). "Only claims that entirely lack merit under that forgiving standard are to be stricken at the second step of the two-step process." *Id.* at *27-28.

As the Oregon Court of Appeals has stated, this "low bar befits the pretrial nature of a special motion to strike under ORS 31.150; the goal, similar to that of summary judgment, is to weed out meritless claims meant to harass or intimidate—not to require that a plaintiff prove its case before being allowed to proceed further." *Young*, 259 Or. App. at 508. Even if the Court finds that Plaintiff's claims are subject to Oregon's anti-SLAPP statutes and do arise out of a protected activity, Consumer Cellular has presented prima facie evidence for its claims.

///

**Response to ORS 31.150 Special Motion to Strike**                                              **Page 5**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

###### a.   Plaintiff has presented substantial evidence to support a prima facie claim for violations of the Unlawful Trade Practices Act.

The UTPA is construed broadly to protect consumers: "The purpose of UTPA is to protect consumers from certain acts." *Hinds v. Paul's Auto Werkstatt, Inc.*, 107 Or. App. 63, 67 (1991) (transaction for purchase and sale of motor vehicle) *quoting Investigators, Inc. v. Harvey*, 53 Or App 586, 592, 633 P2d 6 (1981) (dentist was subject to suit under the UTPA because he was a person offering goods or services for personal and family use to the people of Oregon). "[T]he legislative history of the Oregon Unlawful Trade Practices Act supports the view that it is to be interpreted liberally as a protection to consumers." *Denson v. Ron Tonkin Gran Turismo, Inc.,* 279 Or. 85, 90 n.4 (1977)).  Consumer Cellular's claims in this action fall squarely within the act's purpose as a consumer protection statute that must be construed as broadly as possible to protect consumers.

ORS § 646.638 provides a cause of action as follows:

> "[A] person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper."

ORS § 646.638.  To state a claim under ORS § 646.638, a plaintiff must show an "ascertainable loss of money or property" caused by another party's misconduct as specified in ORS § 646.608. For the following reasons, the claim is proper:

First, Consumer Cellular is a proper plaintiff under the UTPA. The definition of a "person" under ORS § 646.605(4) authorized to bring a UTPA claim includes "corporations,

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

trusts, partnerships, incorporated or unincorporated associations and any other legal entity."[1] ORS § 646.605(4). "These statutes [ORS § 646.605(4) and ORS § 646.638] clearly contemplate that a corporation may bring a private action against another corporation." *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 129 Or. App. 206, 217 (1994) *reversed on other grounds by Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or. 406, 408 (1995). ORS § 646.608(1)(h) expressly references disparagement of the "business of a customer or another" by use of "false or misleading representations of fact." Consumer Matter clearly qualifies as a plaintiff under the statute's plain language and purpose.[2]

Second, both Consumer Cellular and Consumer Affair's goods and services constitute "real estate, goods, or services" as contemplated by the statute. "Real estate, goods, or services" are defined in ORS § 646.605(6)(a) as "those that are or may be obtained primarily for personal, family, or household purposes… and includes… franchises, distributorships and other similar business opportunities…." ORS § 646.605(6)(a) (emphasis added). ConsumerAffairs provides consumer services in the form of web-based consumer news, product information and reviews to likely buyers of certain consumer products. (AC ¶ 3). Consumer Cellular's cell phone services

---

[1] "Most states that permit business claims under their UDTPAs do so by providing that suit can be brought by 'any person,' and then defining the word 'person' to include corporations. Even though the rationale for permitting business claims under UDTPAs would seem to fit more closely with smaller corporations that have limited bargaining power, corporations of any size can bring suit under UDTPAs." *See* Gilleran, Michael C., *The Rise of Unfair and Deceptive Trade Practice Act Claims,* Oct. 17, 2011. http://apps.americanbar.org/litigation/committees/businesstorts/articles/fall2011-unfair-deceptive-trade-practice-act-claims.html

[2] In addition to being a "person" as defined under ORS § 646.605(4), Consumer Cellular is arguably itself a consumer of ConsumerAffairs products, having visited the website on numerous occasions and thereby producing ad revenue for ConsumerAffairs.com. ConsumerAffairs also targeted Consumer Cellular aggressively with respect to its "Accredited Member" program.

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 7**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

are primarily offered to consumers for personal, family or household use with a focus on providing no-contract, affordable pricing for consumers over 50. (AC ¶ 2). Both ConsumerAffairs and Consumer Cellular therefore conduct consumer transactions concerning "real estate, goods, or services" as defined in ORS § 646.605(6)(a).[3]

Third, ConsumerAffairs' manipulation of user-generated reviews, misrepresentations of impartiality, and extortionate conduct regarding Consumer Cellular's services satisfy the requirements of sections (1)(b), (1)(e), and (1)(h) of ORS § 646.608, which states:

> "(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
> ***
> (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services;
> ***
> (e) represents that real estate, goods or services have…approval, characteristics,…uses, benefits, quantities or qualities that the real estate, goods or services do not have….;
> ***
> (h) disparages the real estate, goods, services, property or business of a customer or another by false or misleading representations of fact."

Applying the facts to this law, it is clear that ConsumerAffairs.com's manipulative, deliberate suppression of positive user-generated reviews of Consumer Cellular's goods and services, combined with its false representations of impartiality and omissions of material fact (1) has caused confusion or misunderstanding as to the "source, sponsorship, approval, or certification" of  Consumer Cellular's products as contemplated by ORS § 646.608(1)(b); (2) constitute "deceptive representations" regarding Consumer Cellular's goods and services as

---

[3] The term "consumer" is not defined among the "definitions" offered in ORS § 646.605.

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 8**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

contemplated by ORS § 646.608(1)(d); (3) constitute a representation that Consumer Cellulars'

goods and services "have sponsorship, approval, characteristics… or qualities" that they do not

have, or a "sponsorship, approval, status, qualification [or] affiliation" that they do not have, in

each case as contemplated by ORS § 646.608(1)(e); and (4) disparaged goods and services

provided by Consumer Cellular "by false or misleading representations of fact" as contemplated

by ORS § 646.608(1)(h).  Consumer Cellular is therefore entitled to the greater of statutory

damages of $200 or its actual losses, in addition to punitive damages and "any equitable relief

the court considers necessary or proper." ORS § 646.638.

Finally, Consumer Cellular has suffered "ascertainable losses" as a result of Consumer

Affair's intentional manipulation and deceit of consumers.  (AC ¶ 24).  The resulting harm from

Consumer Affair's deliberate deception of consumers is shown by Consumer Affair's own

representations:

> "[Consumer Affair's presents] an opportunity for the brand to
> repair a currently negative sentiment in organic search for
> searchings on both your brand name and for reviews on the
> brand… The page gets enough views in a month to pay for the
> program itself and then some with even a low conversion to sales
> rate of 1% (see [web traffic statistics].

(AC ¶ 12).

Consumer Cellular's claims are consistent with the intent of the UTPA.  Consumer

Affair's business model deceives consumers into believing they are reading unbiased and

independent content and it capitalizes on that deceit by "allowing" companies like Consumer

Cellular to pay a monthly fee to repair the damage that ConsumerAffairs.com has itself created.

Oregon courts have not yet applied Oregon's UTPA to purely commercial transactions between

businesses in which no consumers were deceived or harmed, where neither party provided any

goods or services to consumers, or where the plaintiff is a business competitor and not a

**Response to ORS 31.150 Special Motion to Strike**                              **Page 9**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

consumer of the defendant business's goods or services. But the cases cited by Defendants are distinguishable with respect to Consumer Cellular's claims against ConsumerAffairs.  Here  both Consumer Cellular and ConsumerAffairs provide goods and services to consumers as defined by ORS 646.605(6)(a).  And here Consumer Affair's misrepresentations are directed to consumers and intended to deceive the consuming public – as distinguishable from cases in which a commercial plaintiff alleges misrepresentations and unfair practices between business entities only, with no allegation of consumer confusion or deceit. Consumer Cellular has established its prima face case with respect UTPA claims and the motion to strike should be denied.

> **b.    Plaintiff has presented prima facie evidence to support the claim for intentional interference with prospective economic relations.**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege: "(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *Douglas Med. Ctr. LLC v. Mercy Med. Ctr.*, 203 Or. App. 619, 630 (2006) *quoting McGanty v. Staudenraus*, 321 Ore. 532, 535, 901 P.2d 841 (1995).  "Improper means" must be "independently wrongful by reason of statutory or common law, and includes violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." *Douglas Med. Ctr. LLC v. Mercy Med. Ctr.,* 203 Or. App. 619, 634 (2006).  With respect to these statutory and common law precepts, "it is not necessary to prove all the elements of liability for another tort if those elements that pertain to the defendant's conduct are present. For instance, fraudulent misrepresentations made to a

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

third party are improper means of interference with plaintiff's contractual relations whether or not the third party can show reliance injurious to himself." *Id.* An "improper purpose" or improper motive includes any act to injure the plaintiff without any other legitimate basis for the act. *Straube v. Larson*, 287 Or. 357, 362 (1979).

Under Oregon law, evidence of prospective economic advantage or business relationship is sufficient to sustain this claim, and allegations of the existence of a contract or even an offer to contract with a third party are not necessary. *See Allen v. Hall*, 328 Or. 276, 281 (1999); *Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or App 199, 611 P2d 658, rev. denied, 289 Or 373 (1980) (interference with "tentative agreement" or "prospective contract" sufficient to sustain claim, unless interference was within fair competition privilege); *Luisi v. Bank of Commerce*, 252 Or 271, 449 P2d 441 (1969)("[A] third-party's interference may be actionable "even though the arrangement interfered with does not rise to the dignity of a contract.").

Here, Consumer Cellular's online sales metrics and ConsumerAffairs' own representations and data confirm that Consumer Cellular has a "reasonable probability of a business opportunity" with between 1.69% - 2.32% of consumers specifically seeking to make contact with Consumer Cellular. (AC ¶ 9). ConsumerAffairs acknowledged that Consumer Cellular's treatment on the ConsumerAffairs.com website was steering not less than "$7,200 a month in customer lifetime revenue" away from Consumer Cellular. (AC ¶ 9). This estimate of harm is not speculative; it is based on trackable statistics and verifiable sales predictions—i.e. converting 18,000 unique inquiries into Consumer Cellular's products into paying customers at a 2% conversion rate. *Id*. And this harm was intentionally caused by ConsumerAffairs' willful disparagement of Consumer Cellular. Complaint, ¶ 22(a)-(h).

**Response to ORS 31.150 Special Motion to Strike**                    **Page 11**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Indeed, ConsumerAffairs is *acutely aware* of Consumer Cellular's business expectancy of converting between 1-3% of online inquiries by potential customers into actual sales.[4] Internet sales are a substantial component of Consumer Cellular's business, and cell phone and cell phone service transactions are particularly likely to be conducted online. ConsumerAffairs' presentation to Consumer Cellular specifically highlighted the fact that consumers tend to research online before buying, and rely on reviews like those offered by ConsumerAffairs.  See (AC ¶ 9) ("87% of consumers research a company online before buying. 88% of consumers trust reviews.").  ConsumerAffairs acknowledged that Consumer Cellular's treatment on the ConsumerAffairs.com website was steering not less than "$7,200 a month in customer lifetime revenue" away from Consumer Cellular.  *Id.*   And this estimate of harm is not speculative, but rather reasonably based on trackable statistics and verifiable sales metrics—i.e. converting 18,000 unique inquiries into Consumer Cellular's products into paying customers at a 2% conversion rate.  *Id.*  But in reality, the damage caused by Consumer Affair's conduct is much higher: Consumer Cellular's own internet sales metrics show conversion rates of 1.69% - 2.32%, and unique views sales losses caused by Consumer Affair's deliberate interference with Consumer Cellular's prospective customers in the amount of $5,230,072.00.  (AC ¶ 24(a)).

Consumer Cellular's intentional interference and improper purpose have been exhaustively pleaded, and more than substantiate a prima facie case for intentional interference with prospective economic relations:

---

[4] Given the undisputed communications from ConsumerAffairs to Consumer Cellular, Defendants' assertion that "plaintiff has not—and cannot—allege the ConsumerAffairs knew of the existence of any prospective business relationship" is without merit.  See Motion to Strike, p. 24.

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 12**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

- "Only review pages of non-paying members contain a superimposed screen prompt on every page saying 'Not Impressed With [brand]? Find a company you can trust.'" Id.

- Deliberate suppression of Consumer Cellular's "Star Rating" in an effort to drive away customers and coerce Consumer Cellular into becoming an "Accredited Member." (AC ¶ 13).

- "Defendants have for over a year intentionally almost entirely screened positive Consumer Cellular reviews from posting with the limited exception of the time when Consumer Cellular was talking with ConsumerAffairs about a possible deal." (AC ¶ 16).

- Refusing to post or deleting positive online reviews, including Joe Monahan's 2014 review, in violation of ConsumerAffair's representation to customers that they are an independent and impartial "consumer news, information and [consumer advocacy" organization, and that they do not remove consumer reviews. (AC ¶21).

- Deceitful and improper manipulation of the review process and satisfaction rating system to favor Accredited Members and disparage companies that refuse to pay Consumer Affair's fees. (AC ¶¶ 4, 22-23).

ConsumerAffairs cites three district court cases to support its claim that Consumer Cellular lacked a sufficient business expectancy with consumers seeking information about Consumer Cellular's products. These cases either do not conflict with a finding that Consumer Cellular had a reasonable probability of a business opportunity with consumer searching for its brand online, or are factually distinguishable. First, in *LaHodny v. 48 Hours, et al*., No. 6:13–cv–02102–TC, 2015 WL 1401676, at *5 (D. Or. Mar. 24, 2015), the court struck the intentional interference claim where the defendant was a news organization publishing information about a murder. The court found "there [was] no allegation that defendants knew of any current or

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

prospective business relations.  Here, however, ConsumerAffairs has deliberately sought to insinuate itself into the relationship between Consumer Cellular and customers specifically seeking information about Consumer Cellular's products.  In *FLIR Systems, Inc. v. Sierra Media, Inc.*, No. CV–10–971–HU, 2011 WL 1832806 (D. Or. May 10, 2011), the plaintiff sued a competitor for making a promotional video that portrayed plaintiff's products in a poor light. The court stated that the intentional interference doctrine "does not extend the first element of a claim for intentional interference to a relationship that might happen with just anyone," and found that a competitor's advertisement did not tortuously interfere with a protected business expectancy with "a potential customer who has had no contact with the plaintiff… purchase a competing product rather than plaintiff's product." *Id.*, *17, 19.  In contrast, ConsumerAffairs is not a competitor of Consumer Cellular producing advertisements that favor its own products— rather, ConsumerAffairs is deliberately drawing customers who are specifically searching for Consumer Cellular's products online for the purpose of misleading them about those services.

Finally, in *Evans v. Sirius Computer Solutions, Inc.*, No. 3:12–CV–46–AA, 2012 WL 1557294, at *3 (D. Or. May 1, 2012), the court denied a defendant's motion to dismiss plaintiff's intentional interference claim and found sufficient allegations of "future agreements" with plaintiff's customers.  Plaintiff complained that his former employer, a direct competitor, was contacting Plaintiff's clients and discouraging new clients.  The court reasoned that while a "mere possibility a business might buy a product in the future is not enough," where a plaintiff alleges that it "had a business relationship with 'potential customers' prior to the action that allegedly interferes," such pleading is sufficient.  *Id.* at 8-9.  Here, Consumer Cellular alleges that its potential customers have searched for Consumer Cellular's products online, and that those customers have been intercepted by Consumer Affair's false and misleading "consumer

**Response to ORS 31.150 Special Motion to Strike**                                **Page 14**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

news" website.  The online consumer's specific interest in Consumer Cellular therefore precedes ConsumerAffairs interference, and Consumer Cellular's pleading comports with the doctrine of this case to the extent it applies.

By its own admission, ConsumerAffairs has deliberately, intentionally interfered with Consumer Cellular's business relationships with its prospective customers using improper means and for an improper purpose.  The basis for the calculation of damages has been essentially asserted by ConsumerAffairs itself as it tried to extort Consumer Cellular.  Abundant evidence of each element of this claim is present and the Motion to Strike should be denied.

### c. Consumer Cellular's RICO claim is not subject to the anti-SLAPP motion, but for the record the claim is well pled.

Any person who has been "injured in his business or property by reason of" conduct constituting a RICO violation may assert a RICO claim under 18 U.S.C. § 1964(c).  Plaintiffs claim RICO violations pursuant to 18 U.S.C. §§ 1962 (c) and (d).  As required, Plaintiff has pled facts establishing the essential elements of a RICO claim, which are (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity,  and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4) .

Consumer Cellular has sufficiently pled multiple acts of wire fraud in addition to attempted extortion under Oregon law.  Defendants do not per se contest that "racketeering activity" as defined in RICO includes wire fraud and extortion under Oregon law.

### (1) Consumer Cellular has sufficiently pled multiple acts of wire fraud against each Defendant.

**Response to ORS 31.150 Special Motion to Strike**                    **Page 15**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

The wire fraud statute prohibits the use of the wires "for the purpose of executing" a "scheme or artifice to defraud" including by means of false or fraudulent pretenses or representations 18 U.S.C. § 1343. A "scheme or artifice to defraud" is a plan to deprive a person of something of value by trick, deceit, chicane or overreaching. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008). The scheme may involve any affirmative misstatements or half-truths involving omitted or undisclosed facts. *United States v. Woods*, 335 F.3d 993, 997-999 (9th Cir.); *cert. denied*, 540 U.S. 1025 (2003). Even where statements that are part of the scheme are not literally false the statements as a whole together with half-truths involving non-disclosures as well as "alternative routes" such as actions involving "a scheme or artifice to defraud which may or may not involve and specific misstatements." *Id*.

> [T]he deception need not be premised upon verbalized words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance. *** Put another way, "[t]he fraudulent nature of the 'scheme or artifice to defraud' is measured by a non-technical standard. Thus, schemes are condemned which are contrary to public policy or which fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society."

*Id*., at 998 (citations omitted).

Consumer Cellular has met the pleading requirements of Rule 9(b) for wire fraud by alleging in detail the times, places and nature of the multiple components of the Defendants' attempted extortion and related ongoing and open-ended web of deception of half-truths and non-disclosures of online consumers by the self-described unbiased consumer advocacy organization reviewing Consumer Cellular and its competitors. (AC   ). The mutual involvement of ConsumerAffairs.com and Consumers United is alleged (AC   ), along with the position of control exercised by Carman, the self-described architect of the business model that amounts to a scheme of internet online

**Response to ORS 31.150 Special Motion to Strike**                                      **Page 16**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

deception of consumers looking at Consumer Cellular and of attempted extortion (AC  ).  Carman is

the president, and holds all official offices of ConsumerAffairs.com and is the manager of

Consumers United (AC    ).  As held by the Ninth Circuit in *Wool v. Tandem*:

> [W]here, as here, the corporate officers are a narrowly defined
> group charged with the day-to-day operations of a public
> corporation, it is reasonable to presume that these officers had the
> power to control or influence the particular transactions giving rise
> to the securities violation.  Consequently, it is sufficient if Wool
> informed the individual defendants "who they are alleged to
> control and what acts or status indicate such control." ***
> Moreover, in cases of corporate fraud where the false or
> misleading information is conveyed in prospectuses, registration
> statements, annual reports, press releases, or other "group-
> published information," it is reasonable to presume that these are
> the collective actions of the corporate officers.  *See Bruns*, 583 F.
> Supp. at 1052; *Zatkin*, 551 F. Supp. at 42.  Under such
> circumstances, a plaintiff alleges culpable participation under
> section 20(a) by pleading the misrepresentations with particularity
> and where possible with respect to the individual
> defendants. *Cf. Bruns*, 583 F. Supp. at 1052; *Zatkin*, 551 F. Supp.
> at 42.

818 F.2d 1433 (9th Cir. 1987).

It is particularly reasonable to presume that where the scheme of deception involves

"group published information" it is the collective action of the officers. *Id*. at 1440.  Under Rule

9(b), specific intent may be inferred from the circumstances.  Further details of the inner

machinations of the Defendants concerning their scheme of deception and extortion are in their

sole possession. "In such cases, the particularity requirement may be satisfied if the allegations

are accompanied by a statement of the facts upon which the belief is founded." *Id*.

Defendants incorrectly assert that, to allege a RICO claim based on predicate acts of wire

fraud, Plaintiffs' must allege that the Defendants made the false statements to or intended to

defraud or deceive Consumer Cellular, rather than the deceit of online consumers reviewing

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Consumer Cellular, citing *Sanville v. Bank of American Nat. Trust Savings Ass'n*, 18 Fed. Appx.

500, 501 (9th Cir. 2001).  Seven years after *Sanville*, the United States Supreme Court, in *Bridge*

*v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008), held that in RICO claims based on a

scheme to defraud (e.g., mail fraud in that case) first party reliance is not an element of the RICO

claim.  Affirming the Seventh Circuit's reversal of the trial court's dismissal of a RICO claim for

competitive injury by bidders for county tax liens against their competitors who allegedly made

misrepresentations to Cook County which were not relied on by the plaintiff bidders, the Court

stated:

> Whatever the merits of petitioners' arguments as a policy matter,
> we are not at liberty to rewrite RICO to reflect their—or our—
> views of good policy.  We have repeatedly refused to adopt
> narrowing constructions of RICO in order to make it conform to a
> preconceived notion of what Congress intended to proscribe. ***
> We see no reason to change course here.  RICO's text provides no
> basis for imposing a first-party reliance requirement.  If the
> absence of such a requirement leads to the undue proliferation of
> RICO suits, the "correction must lie with Congress." *** "It is not
> for the judiciary to eliminate the private action in situations where
> Congress has provided it."  *** For the foregoing reasons we hold
> that a plaintiff asserting a RICO claim predicated on mail fraud
> need not show, either as an element of its claim or as a prerequisite
> to establishing proximate causation, that it relied on the defendant's
> alleged misrepresentations.

*Id*. at 660-661 (citations omitted).

See also, *Newcal Indus. V. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008), *cert.*

*denied* 557 U.S. 903 (2009), where the Ninth Circuit reversed the trial court's dismissal of a

RICO claim by plaintiff lessors of copier equipment against their competitor IKON based on an

alleged scheme of mail and wire fraud where IKON allegedly misled its customers under

contract (not IKON's competitors bringing suit) by inducing the customers to sign amendments

without disclosing the amendments would extend their contract term.  *Id*. at 1043-44, 1054-1056.

**Response to ORS 31.150 Special Motion to Strike**                                           **Page 18**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

IKON's competitors claimed injury from the lost market share due to the extended contracts and from inflated prices to buy out the contracts.  *Id.* at 1055.

(2)   **Consumer has plead actionable extortion under ORS 164.075.**

Under ORS 164.075, Consumer Cellular has pled that Defendants' have used their scheme of wire fraud as a means of attempting to extort Consumer Cellular to pay Consumers Unified large fees to repair the intentional disparagement of Consumer Cellular with regard to online consumers considering Consumer Cellular.  ORS 164.075 defines the crime of Theft by Extortion.  Defendants' sole opposition to this racketeering activity is based on the reasoning in *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1132 (9th Cir. 2014).  *Levitt* involved interpretation of extortion under a California law (Cal. Pen. Code § 518), a very similar to the Hobbs Act (18 U.S.C.S § 1951(b)(2)).  *Id.*  However, the terms of ORS 164.075 are readily distinguishable from the California law.  Therefore, the reasoning of the court in  *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1132 (9th Cir. 2014) is inapplicable here.

As stated in *Levitt v. Yelp*, "Like the Hobbs Act, California law states that "[e]xtortion is the obtaining of property from another, with his consent induced by a wrongful use of force or fear."  See Cal Pen Code § 518 ("Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."); 18 USC § 1951(b)(2) ("The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.").

In contrast, Oregon's ORS 164.075 states that a person commits theft by extortion when, as alleged by Consumer Cellular, "the person compels or induces another to deliver property to

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

the person or to a third person by instilling in the other a fear that, if the property is not so delivered, the actor or a third person will in the future" "cause damage to property," "engage in other conduct constituting a crime," or "expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule."

ORS 164.005(5), which defines "property" as "any article, substance or thing of value, including, but not limited to, money, tangible and intangible personal property, real property, choses-in-action, evidence of debt or of contract." This definition has been interpreted broadly, and includes "anything of value." *State v. Nyhuis*, 251 Or. App. 768, 771 (2012).

States with extortion statutes similar to Oregon's have interpreted their statutes to include fear of economic or reputational harm. Like Oregon, extortion in Arizona may be based on a threat to "cause damage to property" or "cause anyone to part with any property." A.R.S. § 13-1804A(3),(8). Under this statute, where plaintiff alleged that defendant threatened to cause damage to plaintiff's business in the form of refusal to process credit card transactions and demand for monthly "consulting" fees, the plaintiff had sufficiently pled theft by extortion as a predicate offense to RICO claim. *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1050 (D. Ariz. 2004). Similarly, in New York, "It is well-settled law in this State that fear of economic loss or harm satisfies the ingredient of fear necessary to the crime." *People v. Dioguardi*, 8 N.Y.2d 260, 268 (1960). Under New York's NY CLS Penal § 135.60, extortion includes a threat to "cause damage to property" or "perform any other act which would not in itself benefit the actor but which is calculated to harm another person…" NY CLE Penal § 135.60(2),(9). In Connecticut, the fear that defendant would impede plaintiff's renovation and development plans for commercial property was sufficient to sustain crime of extortion under Conn. Gen. Stat. § 53a-119(5). *See* Conn. Gen. Stat. § 53a-119(5)(B)(damage to property), (I) ("inflict any other harm");

**Response to ORS 31.150 Special Motion to Strike**                 **Page 20**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

*State v. Perez*, 147 Conn. App. 53, 64 (2013); *See also McPhee Elec. Ltd., LLC v. Konover Constr. Corp.*, 2009 Conn. Super. LEXIS 3110, 2009 WL 4846555 (Conn. Super. Ct. Oct. 22, 2009) ("[A] business should exercise due care in speech that may affect the economic well-being of a competitor [because there is] no significant public benefit in giving business rivals greater protection for . . . defamatory speech they use as an economic club to harm each other.")

For these reasons, Consumer Cellular's extortion claim under Oregon's law should stand.

(3)    **Consumer Cellular has pled a pattern of racketeering activity.**

A "pattern" of racketeering activity also requires proof that the two or more racketeering predicates are related and "that they amount to or pose a threat of continued criminal activity." Evidence of multiple schemes is not required to show a threat of continued criminal activity, and proof of a single scheme can be sufficient so long as the predicate acts involved are not isolated or sporadic. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S.229, 239-40 (1989) (noting that Congress "had a fairly flexible concept in mind)." *See also Turner v. Cook*, 362 F.3d 1219, 1229-130 (9th Cir. 2004), and *Allwaste v. Hecht*, 65 F.3d 1523, 1527-1530 (1995). The pattern requirement of continuity may be satisfied where the RICO pattern is closed or where the racketeering activity has persisted over a substantial period of time, such as five or thirteen months, or where the racketeering activity is threatened, ongoing, or has become a regular way of doing business. *Allwaste v. Hecht*, 65 F.3d 1523, 1527-1530 (1995). The requirement of continuity is easily met in this case where, in addition to acts of extortion, the daily pattern of deceptive wire fraud causing mounting injury to Consumer Cellular has gone on for well over a year and continues unabated (AC  ).

Defendants misread the cases they cite for their assertion that a RICO claim requires multiple victims. None of the cited cases so hold. The cited cases dealt with the question of

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 21**

Kᴇʟʟ, Aʟᴛᴇʀᴍᴀɴ & Rᴜɴsᴛᴇɪɴ, L.L.P.
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
520 SW Yᴀᴍʜɪʟʟ, Sᴜɪᴛᴇ 600
Pᴏʀᴛʟᴀɴᴅ, OR 97204
Tᴇʟᴇᴘʜᴏɴᴇ (503) 222-3531
Fᴀᴄsɪᴍɪʟᴇ (503) 227-2980

open-ended continuity in cases where there was a closed scheme of insufficient duration.  It has

long been well settled by the Supreme Court that criminal conduct is sufficiently related if it

"embraces criminal acts that have the same or similar purposes, results, participants, victims, or

methods of commission, or otherwise are interrelated by distinguishing characteristics and are

not isolated events." *H. J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239-40 (1989).  The

question of multiple victims arises if there is only one act of racketeering activity or when the

racketeering activity is over with regard to actions which have injured the defendant.  In that

event multiple victims may indicate that there is open-ended continuity.  Here the web of

deception of online consumers continues daily unabated.  There is no question about whether

there have been at least two acts of wire fraud and that the activity not only poses a threat of

future harm but is a regular way of doing business for the Defendants.  (AC ¶   ).

> (4)     **Consumer Cellular has adequately pled that each of the
> Defendants has participated in the management of the alleged
> alternative RICO enterprises.**

As Defendants acknowledge *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993), only

requires that a RICO defendant have "some role" in the operation or management of a RICO

enterprise.  For the same reasons as described above with regard to the sufficiency of pleading

wire fraud as to each corporate defendant and Carman under Rule 9(b), Consumer Cellular has

sufficiently pled the participation in operation or management of a RICO enterprise.

> (5)     **Consumer Cellular's pleading satisfies RICO's standing
> requirement under Bridge.**

Defendants incorrectly assert that Plaintiff lacks standing to allege a RICO claim because

Plaintiff alleges business injury from Defendants' deception of internet consumers seeking

unbiased reviews.  In *Bridge*, two years after *Anza v. Ideal Steel Supply*, 547 U.S. 451 (2006)

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 22**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

(lack of connection between racketeering activity and injury), the unanimous Supreme Court held that proximate causation under RICO should be a flexible concept and that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." Instead, there need only be "'some direct relation between the injury asserted and the injurious conduct alleged,'" i.e., causation. *Bridge*, 553 U.S. 654, 658 (causation shown where plaintiffs' damages are "foreseeable and natural consequence" of RICO mail and wire fraud scheme).  To the same effect, *see Newcal*, 513 F.3d at 1055-56 (direct competitive injury from fraud on third parties where third parties were not likely to vindicate the fraud).

Here, the directness and foreseeability of the injury under *Bridge* is not in doubt. Plaintiff's continuing injury to its business which is in excess of $5,000,000 is calculated based on the financial injury repeatedly targeted in ConsumerAffairs.com's unsolicited communications with Consumer Cellular in the attempt to coerce Consumer Cellular into paying large fees to Consumers Unified to fix the disparaging impact of ConsumerAffairs.com manipulation review-related online content.  (AC  ).

### d.    Plaintiff has presented substantial evidence to support a prima facie claim for defamation.

The elements of a *prima facie* claim of defamation are "(1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm."  *Neumann*, 261 Or. App. at 575, quoting *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or. App. 560, 584 (2008).  There is evidence to support each of those elements here and Defendants' motion should be denied**.**

**Response to ORS 31.150 Special Motion to Strike**                                   **Page 23**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

(1)    **Defendants' statements were untrue and defamatory.**

The first element of Plaintiff's prima facie claim is met because Defendants' statements were defamatory.  "A defamatory statement is a false statement that would subject the plaintiff to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held or to excite adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Tubra v. Cooke*, 233 Or. App. 339, 347 (2010), citing *Farnsworth v. Hyde*, 266 Or. 236, 238 (1973).

Plaintiff has presented substantial evidence to establish this element.  There is no real question that, if a business is presented as receiving predominantly negative reviews, it would result in a diminishment of the "esteem, respect, goodwill, or confidence" in which it is held. The only question is whether Defendants' presentation of consumer reviews of Plaintiff was false.  Plaintiff has presented substantial evidence that it was.

Even though nearly all of the relevant information is exclusively in the hands of Defendants, Plaintiff has presented sufficient evidence that Defendants' presentation of the reviews of Plaintiff was false.  First, one need only look at the difference between Defendants' presentation of Plaintiff and (1) the reviews of Plaintiff on other consumer review websites, and (2) Defendants' presentation of Plaintiff's competitor, Jitterbug, which has chosen to pay Defendants' demanded fee.

With respect to the reviews of Plaintiff on other sites, they are generally very positive, with Plaintiff being the number one consumer-rated cellular phone provider with Consumer Reports.  (AC ¶ 2).  The overwhelmingly negative reviews of Plaintiff on Defendants' website stand in sharp contrast to the reviews of Plaintiff everywhere else.  That Defendants have used this negative rating as leverage to attempt to convince Plaintiff to pay a membership fee—

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 24**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

combined with the fact that, under Defendants' business scheme, Defendants have no services to offer to a company that enjoys positive reviews—indicates that Defendants took actions to artificially drive down Plaintiff's overall ratings.

Defendants' presentation of Plaintiff's competitor, Jitterbug, illustrates perfectly that Defendants' business model is based on rewarding companies that pay to become members by ensuring that they are presented as being positively reviewed, and punishing those companies that refuse to pay to become members by ensuring that they are presented as being negatively reviewed.  Prior to paying to become a member, Jitterbug had never received a positive review on the website.  (AC ¶ 22(g)(i)).  Immediately after paying the membership fee, however, Jitterbug began receiving predominantly positive reviews to the point that it now enjoys a nearly perfect overall rating on the website.  *Id.*  This is the polar opposite of how Plaintiff has been presented.  Since making clear to Defendants' that it would not pay the membership fee, Plaintiff's reviews have gone steadily downhill to the point where it now has a one-star rating.  *Id.*, ¶ 19.

This disparate treatment is also presented in more subtle ways.  Whereas Jitterbug's reviews are presented as "Reviews and Complaints," Plaintiff's reviews are presented as "Complaints and Reviews."  *Id.*, ¶ 22(f).  Defendants argue that there is no difference between the two phrasings, but the fact is that, if the two phrasings did not convey different messages, Defendants would not bother to use the distinctive phrases.  Defendants use the different phrasings because they know that "Complaints and Reviews" indicates to the average reader that the business in question has primarily received complaints.  One of the perks of becoming a paying member is that this is switched to "Reviews and Complaints" so that the reader is not given a negative impression at the outset.  While more subtle, this practice also demonstrates that

**Response to ORS 31.150 Special Motion to Strike**                    **Page 25**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Defendants artificially constructed a negative presentation of Plaintiff simply because it would not pay the membership fee.

In addition to this comparative evidence, Plaintiff has also presented direct evidence that Defendants removed and refused to post positive reviews of Plaintiff.  *Id*, ¶ 21.  This is not based on speculative pleading, as Defendants claim, but is based on actual reports from customers who have told Plaintiff that they submitted positive reviews that were never posted.  *Id*.

Defendants have submitted a declaration admitting that they removed positive reviews of Plaintiff, but claiming that they were removed for legitimate reasons.   Carman Decl., ¶ 9.  However, it is improper for the Court to weigh the parties' respective evidence in the context of an anti-SLAPP motion.  Plaintiff's only burden at this stage is to present evidence of a *prima facie* claim and "the fact that the defendant may present substantial evidence to the contrary is…irrelevant to determining whether the plaintiff has met his burden."  *Schwern*, 2014 U.S. Dist. LEXIS 92310, at *7.  As a result, the Court should not even consider any contrary evidence submitted by Defendants when determining whether Plaintiff has met its burden.

Further, the declaration submitted by Defendants (without any supporting evidence) only reinforces the fact that there are substantial questions of fact regarding Defendants methods for screening out and removing reviews.  As discussed below, to the extent that the Court finds that Plaintiff has not presented substantial evidence of this element, leave should be given for Plaintiff to conduct discovery on this issue.

Finally, Defendants also argue that Plaintiff's defamation claim fails because it is based on statements of opinion.  Defendants misunderstand the nature of Plaintiff's claim and improperly conflate their own conduct with the reviews submitted by consumers.  Defendants rely on a long line of cases holding that a consumer's rating or evaluation of a business is

**Response to ORS 31.150 Special Motion to Strike**                              **Page 26**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

inherently a statement of opinion.  However, these cases are inapplicable here because Plaintiff's claim is not based on any consumer review that was submitted to Defendants' website.

To the contrary, Plaintiff's claim is based on Defendants' deliberately misleading presentation of the consumer reviews that were submitted.  Plaintiff's claim is based on Defendants' conduct in removing positive reviews and artificially driving down the overall rating of Plaintiff.  While an ordinary visitor to the site would understand that the star rating represented the aggregated opinions of the consumers who had submitted reviews, he would also reasonably believe that it was the result of an unbiased process of compiling the ratings from each individual review.  Any opinion of Defendants would never enter the equation.

Simply put, Plaintiff's claim is not based on any opinion expressed by Defendants; it is based on Defendants' intentionally misleading communication of other consumer's opinions.  This presentation was not based on Defendants' opinion of Plaintiff, but rather was based on Defendants' business model of ensuring that companies who did not pay to become members are shown as being poorly reviewed.  Because Plaintiff's defamation claim is not based on any statement of opinion, Defendants' argument should be rejected and the Court should find that Plaintiff has presented substantial evidence of the first element of a prima facie claim for defamation.

(2)    <strong>Defendant published the defamatory material.</strong>

There is no dispute that the second element of a *prima facie* claim is met because there is no question that Defendants' defamatory misrepresentations were published on Defendants' website and communicated to all of the site's visitors.  As a result, there is substantial evidence supporting the second element of Plaintiff's *prima facie* claim.

///

**Response to ORS 31.150 Special Motion to Strike**                         **Page 27**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

(3)    **The defamatory statements were defamatory per se and resulted in special harm to Plaintiff.**

Defendants also do not dispute that the third and final element is met.  This is because it is well-settled that statements that attack a person's professional capacity are defamatory *per se* and there is no need to prove special damages.  *Affolter v. Baugh Constr. Or.*, 183 Or. App. 198, 203 (2002).  Further, even if special damages were required, Plaintiff can make that showing. Plaintiff has lost approximately 6,126 customers as a result of Defendants' false and defamatory representations, equaling a total financial loss of approximately $5,230,072.  Complaint, ¶ 24. This loss of earnings qualifies as special damages and satisfies the third element of Plaintiff's *prima facie* claim.  *Nat'l Union Fire Ins. Co.*, 220 Or. App. at 586.

(4)    **It is improper for Defendants to raise the affirmative defense of immunity at this stage and, even if the Court were to consider it, immunity does not apply here.**

Defendants claim that, even if Plaintiff could establish a prima facie claim for defamation, Defendants would be immune from liability under Section 230 of the Communications Decency Act.  Defendants' Motion, at 22-23.  However, such an argument is not properly made in the context of a motion to strike under ORS 31.150.  Given the purpose of ORS 31.150 and its pretrial nature, a plaintiff seeking to overcome a motion brought under that statute must only present evidence "sufficient to meet the 'low bar' established by ORS 31.150 'to weed out meritless claims meant to harass or intimidate' a defendant."  *Neumann*, 261 Or. App. at 575, quoting *Young*, 259 Or. App. at 508.  Defendants seek to raise that bar by arguing that Plaintiff must also defeat any affirmative defenses that are asserted by Defendants. This argument is not supported by the law.  Indeed, no Oregon court has ever granted a motion

**Response to ORS 31.150 Special Motion to Strike**                    **Page 28**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

brought under ORS 31.150 on the basis that an affirmative defense such as privilege or immunity applies.

The only courts that have considered such an argument have expressed skepticism that the court could entertain such an argument at this stage. *Neumann*, 261 Or. App. at 580 n.8 (stating that, while it did not matter because the defendant had not presented evidence that, as a matter of law, a privilege applied, the court would "save for another day the question of whether and to what extent ORS 31.150 authorizes parties to litigate affirmative defenses in the context of a special motion to strike"); *Young*, 259 Or. App. at 510 (overruling the trial court's grant of an ORS 31.150 motion to strike because that court had improperly weighed the plaintiff's allegations against the defenses asserted by the defendant "[r]ather than determine, simply, whether plaintiff had presented substantial evidence to support a prima facie case"). Because the affirmative defense of immunity was improperly raised by Defendants at this stage in the proceedings, this argument should not be considered by the Court.

Even if the Court considered this argument, it would fail. Defendants again misunderstand the basis of Plaintiff's claim and attempt to conflate Defendants' actions with the reviews submitted by the website's users. The immunity provision on which Defendants rely states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). However, Plaintiff does not seek to hold Defendants liable for the content of any reviews that it posted; rather, Plaintiff seeks to hold Defendants liable for their deliberately misleading presentation and filtering of those reviews on the basis of Plaintiff's refusal to pay a requested fee.

**Response to ORS 31.150 Special Motion to Strike**                    **Page 29**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Defendants further argue that the editorial functions that it performed in determining which reviews to post and how to categorize those reviews does not defeat immunity under Section 230.  However, each of the cases on which Defendants rely for this argument only speak to "minor alterations."  *See Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (stating that "something more substantial" than the minor alterations performed could defeat immunity); *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1173 n.36 (9th Cir. 2008) (characterizing the defendant's actions as "minor editing and selection").

These cases also distinguish between websites that acted "merely as a passive conduit" and websites that are "directly involved with developing" the offending content. *Roommates.com, LLC*, 521 F.3d at 1172; *see also Batzel*, 333 F.3d at 1031 (holding that Section 230 immunity does not apply when the website plays a role in creating or developing the content in question).

Whether or not Defendants can claim immunity under Section 230 depends directly on the extent to which it shaped the content on its website, *i.e.* whether it was "merely a passive conduit" or whether it was "directly involved with developing" the content.  Plaintiff has alleged that Defendants' filtering and editing of consumer reviews dramatically and substantially altered their content such that, while Plaintiff enjoyed relatively positive reviews on every other consumer review site, Plaintiff was presented as having received primarily negative reviews on Defendants' website.  While Defendants claim that its actions in removing postings and editing Plaintiff's star rating were all taken for legitimate reasons, there are clear questions of fact as to whether this is actually the case.

If the Court even considers the defense at this stage, Defendants must prove that it applies "as a matter of law."  *Neumann*, 261 Or. App. at 580 n.8.  Defendants have not done so.  They

**Response to ORS 31.150 Special Motion to Strike**                                        **Page 30**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

have simply submitted a single declaration without any additional evidence related to their role

in shaping the content of their website.  Questions of fact exist that can only be resolved through

discovery.  As a result, if the Court does consider the immunity defense, it should be rejected and

Defendants' Motion should be denied.

**D.    Plaintiff's claims against Defendant Carman are well-pled.**

Defendants have also moved to strike all claims against Defendant Carman.  For all of the

reasons discussed above, Defendants' Motion should be denied.  Defendants argue that the

claims against Carman should be stricken because "plaintiff fails to set forth any facts sufficient

to establish defendant Carman's individual liability for any of the claims it asserts against him."

Defendant's Motion, at 24.  Defendants claim that, "after naming him as a defendant, and

alleging 'on information and belief' that 'Carman established a new business model when he

acquired the business,' plaintiff makes no further specific reference to Carman's actions in its

complaint."  *Id.* (internal citations omitted).

That assertion is not true.  Plaintiff has alleged and supported with evidence that t

Carman is the sole Manager of Defendant Consumers Unified and the President, sole Director,

Secretary and Treasurer of Defendant ConsumerAffairs.com.  (AC ¶ 3).  Additionally, Plaintiff

has alleged, as supported by a Carman statement in an interview published by a Tulsa, Oklahoma

newspaper that Carman "acquired" ConsumerAffairs.com in 2010. (AC ¶ 11).  Also supported

by Carman's statements in that interview, Plaintiff alleges that Carman established a new

business scheme when he acquired ConsumerAffairs.com, and that scheme was designed to try

to convince brands included in its review pages to pay lucrative fees to become accredited

members entitled to exclusive ConsumerAffairs ratings-related treatment and ratings image

transformation services.  (AC ¶ 11).  That is the very scheme that underlies Plaintiff's claims.

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 31**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Carman's personal involvement in the tortious conduct against Plaintiff is sufficient to give rise to personal liability. *Cortez v. Nacco Material Handling Group, Inc.*, 356 Or. 254, 272 (2014) (citing to *Restatement (Third) of Agency* § 7.01 comment d for the holding that corporate officers are personally subject to liability when the officer "directs or participates" in tortious conduct). Defendant Carman's role in shaping the extortionate policy to be followed by Defendant ConsumerAffairs.com's employees is sufficient direction or participation to subject Defendant Carman to personal liability.

Further, even under the heightened pleading standard of FRCP 9(b) that applies to Plaintiff's RICO claim, Plaintiff has alleged sufficient facts to state a claim against Carman. While it is true that, "[u]nder most circumstances, the claimant also must attribute specific conduct to individual defendants…[t]his level of particularity…may be relaxed in cases of corporate fraud when the factual information is peculiarly within the corporation's knowledge or control and inaccessible to the claimant until discovery has been completed." *Altamont Summit Apts. LLC v. Wolff Props. LLC*, 2002 U.S. Dist. LEXIS 2761, at *14 (D. Or. Feb. 13, 2002).

In this situation, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Wool.*, 818 F.2d at 1439. Allegations based "on information and belief" satisfy the particularity requirement "if the allegations are accompanied by a statement of the facts upon which the belief is founded." *Id.* As stated in the RICO section above, in cases of corporate fraud, particularly when "false or misleading information" is published by a corporation, it is "reasonable to presume" that the corporate officers are responsible for it. *Id.* at 1440.

"[T]here is no reason to protect corporate officers or employees who authorize, direct and participate in tortious conduct by their corporate principal. If the corporation commits a tort

**Response to ORS 31.150 Special Motion to Strike**                    **Page 32**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

as a result of such intentional action on the part of its officers or employees, these agents are also responsible." *Wampler v. Palmerton*, 250 Or. 65, 77 (1968).  Carman's motion to strike all allegations against him should be denied.

**E.     Plaintiff should be allowed to conduct discovery if the court finds that it has not presented prima facie evidence.**

Oregon's anti-SLAPP statute states that all discovery is to be stayed after the filing of a special motion to strike.  ORS 31.152(2).  However, the Ninth Circuit has ruled that such a provision directly conflicts with Rule 56(b).  *Metabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (refusing to enforce an identical provision of California's anti-SLAPP statute).  As a result, when an anti-SLAPP motion is brought in federal court, the non-moving party must be given an opportunity to conduct any discovery that is necessary to establish the prima facie elements of its claims.  *Id*.

If the Court finds that Plaintiff has not necessarily presented prima facie evidence for any claim, Plaintiff requests leave to conduct discovery to secure additional evidence that is in the hands of Defendants.

////

////

////

////

////

////

////

////

**Response to ORS 31.150 Special Motion to Strike**                                    **Page 33**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

## III. CONCLUSION

For the reasons discussed herein, Defendants' ORS 31.150 Special Motion to Strike should be denied.  If the Court does grant any part of the motion, Plaintiff also requests leave to amend.

DATED this 2nd day of November, 2015.

s/ Robert B. Lowry
**THOMAS R. RASK, III**
OSB No. 934031
**ROBERT B. LOWRY**
OSB No. 852751
503/222-3531
**Attorneys for Plaintiff**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,045 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 2nd day of November, 2015.

s/ Robert B. Lowry
**THOMAS R. RASK, III**
OSB No. 934031
**ROBERT B. LOWRY**
OSB No. 852751
503/222-3531
**Attorneys for Plaintiff**

**Response to ORS 31.150 Special Motion to Strike**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Error! No document variable supplied.