IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONSUMER CELLULAR, INCORPORATED,

        Plaintiff,

                                  3:15-CV-1908-PK

v.                                   OPINION AND
                                   ORDER

CONSUMERAFFAIRS.COM, CONSUMERS
UNIFIED, LLC, and DAVID ZACHARY CARMAN,

        Defendants.

PAPAK, Magistrate Judge:

    Plaintiff Consumer Cellular, Inc. ("CCI"), filed this action against defendants

ConsumerAffairs.com. Inc. ("ConsumerAffairs"), Consumers Unified, LLC ("Consumers

Unified"), and David Zachary Carman in the Multnomah County Circuit Court on August 19,

2015. Defendants removed CCI's action to this court effective October 9, 2015, on the basis of

both diversity and federal question jurisdiction.

    Plaintiff CCI is a mobile virtual network operator providing cellphone service to its

customers. Defendant ConsumerAffairs operates a consumer review website hosting consumer

reviews regarding a large number of products and brands. Defendant Consumers Unified is a

closely related affiliate of ConsumerAffairs, and defendant Carman is the principal of both

corporate defendants. By and through its complaint as filed in the Multnomah County court, CCI

alleges that defendants improperly manipulated both the content and the presentation of

consumer reviews on the ConsumerAffairs website in order to provide a significant competitive

advantage to product manufacturers and service providers who pay a large monthly fee to

defendants, relative to manufacturers and providers who decline to pay such fees. Arising out of

the foregoing, CCI alleges defendants' liability (i) for violation of Oregon's Unlawful Trade

Practices Act (the "UTPA"), (ii) for intentional interference with prospective economic relations

under Oregon common law, (iii) for conduct of or participation in an enterprise engaged in wire

fraud and extortion in violation of the federal Racketeer Influenced and Corrupt Organizations

Act ("RICO"), and (iv) for defamation under Oregon common law. CCI seeks monetary

damages in the approximate amount of $5 million, equitable relief under the UTPA, treble

damages under RICO, and award of its fees and costs. This court has federal-question

jurisdiction over CCI's RICO claim pursuant to 28 U.S.C. § 1331 and may properly exercise

supplemental jurisdiction over CCI's state-law claims pursuant to 28 U.S.C. § 1367; in addition,

it appears likely[1] that the court may properly exercise diversity jurisdiction over CCI's action

pursuant to 28 U.S.C. § 1332(a) based on the apparently complete diversity of the parties and the

amount in controversy.

---

[1] Defendants have filed a Corporate Disclosure Statement on behalf of Consumers
Unified (a limited liability corporation), by and through which they assert that Consumers
Unified is a citizen of "Delaware, Virginia, Florida, New Mexico, Massachusetts, Colorado,
California, Nevada, and Oklahoma." Defendants do not otherwise disclose the identities or
citizenship of the members of Consumers United.

On February 29, 2016, I recommended denial of a special motion to strike and constructive alternative motion to dismiss filed by defendants as to all of CCI's claims. On June 2, 2016, Judge Brown adopted my recommendations without modification. On June 22, 2016, defendants appealed this court's denial of their motion to the extent the court declined to strike CCI's Unlawful Trade Practices, intentional interference, and defamation claims, without appealing the court's disposition of the motion to the extent it addressed CCI's federal RICO claim.

Now before the court is defendants' motion (#52) for stay of further proceedings in connection with CCI's RICO claim pending disposition of defendants' pending appeal. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, defendants' motion is denied. A scheduling conference will be set for the purpose of setting a schedule for further proceedings in connection with CCI's RICO claim.

### LEGAL STANDARD

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The district courts are specifically authorized by statute to exercise their discretion to stay proceedings in connection with claims over which they have continuing jurisdiction during the pendency of an interlocutory appeal from disposition of other claims brought as part of the same action. *See* 28 U.S.C. § 1292(b). When considering whether

to exercise their discretion to stay proceedings, the district courts should consider "the possible

damage which may result from the granting of a stay, the hardship or inequity which a party may

suffer in being required to go forward, and the orderly course of justice measured in terms of the

simplifying or complicating of issues, proof, and questions of law which could be expected to

result from a stay." *CMAX*, 300 F.2d at 268, *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254-255

(1936).

MATERIAL FACTS

## I.    The Parties

Plaintiff CCI is a mobile virtual network operator providing cellphone service to its

customers.  CCI is headquartered in Oregon and organized under Oregon law.

Defendant ConsumerAffairs operates a website hosting consumer reviews of a variety of

products, brands, and services.  ConsumerAffairs is organized under Nevada law and appears to

be headquartered in Oklahoma.  Defendant Consumers Unified is a closely related affiliate of

ConsumerAffairs, is organized under Nevada law, and apparently has members who are citizens

of California, Colorado, Delaware, Florida, Massachusetts, Nevada, New Mexico, Oklahoma,

and Virginia.  Defendant Carman is the principal of both corporate defendants, and is a citizen of

Oklahoma.

## II.    Relevant Procedural History

As noted above, on June 22, 2016, defendants appealed this court's denial of their motion

to strike CCI's state-law claims, without appealing this court's denial of their motion to strike or

constructive alternative motion to dismiss CCI's federal RICO claim.  On July 1, 2016, the Ninth

Circuit directed the parties to attend a mediation assessment conference on August 3, 2016.

Page 4 - OPINION AND ORDER

On July 29, 2016, CCI served a request for production of documents on the defendants in connection with the proceedings before this court, seeking discovery relevant to its RICO claim. The deadline for defendants' response to CCI's discovery requests was September 1, 2016.

On August 3, 2016, the parties participated in the mediation assessment conference ordered by the Ninth Circuit, and thereafter began mediation negotiations which continued through August 25, 2016.

On August 9, 2016, defendants filed their motion (now before the court) to stay further proceedings in connection with CCI's RICO claim pending disposition of their appeal regarding the denial of their motion to strike CCI's state-law claims.

On August 24, 2016, the parties conferred regarding the possibility of extension of defendants' deadline for responding to CCI's discovery requests, and CCI advised defendants, as it had done on several previous occasions (beginning in late June), that it would not agree to an extension of greater than a few days absent defendants' agreement to a stipulation that the parties have declined to describe to the court.

On August 26, 2016, defendants moved for extension of time for their response to CCI's discovery request to a date to be determined at the time this court decides the motion to stay now before the court. These chambers granted defendants' motion for extension of time effective August 31, 2016.

## ANALYSIS

The parties are in agreement that, pending defendants' interlocutory appeal (and/or the Ninth Circuit's determination whether it has jurisdiction to consider defendants' interlocutory appeal), further proceedings in connection with CCI's state-law claims either have been stayed

Page 5 - OPINION AND ORDER

automatically or should be stayed in this court's discretion. In addition, CCI is willing to

stipulate to stay of *trial* of its federal RICO claim pending disposition of defendants' appeal.

Thus, the only matter currently in contention is whether, in light of defendants' pending appeal,

this court should stay further *pretrial* proceedings in connection with CCI's federal RICO claim,

and defendants' motion (#52) is granted in part, to the limited extent it addresses trial of CCI's

RICO claim.

The parties are further in agreement that defendants' motion for stay of these proceedings

is governed by the four-factor test traditionally applied to stay of enforcement of judgments or

orders during the pendency of an appeal, articulated by the Supreme Court in such cases as

*Hilton v. Braunskill*, 481 U.S. 770 (1987), and *Nken v. Holder*, 556 U.S. 418 (2009). I am not

persuaded that the parties have identified the appropriate test. First, the *Hilton/Nken* test has

traditionally been applied, not to stay of further proceedings in connection with claims remaining

within the jurisdiction of a district court during the pendency of an interlocutory appeal from

disposition of other, separate claims, but rather to stay of *enforcement* of the particular judgment

or order under pending appeal. *See Hilton*, 481 U.S. at 776 (applying test to stay of enforcement

of an order pending appeal therefrom); *Nken*, 556 U.S. at 434 (same); *see also, e.g., Lair v.

Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (applying test to stay of enforcement of an

injunction pending appeal therefrom); *Leiva-Perez v. Holder*, 640 F.3d 962, 963 (9th Cir. 2011)

(applying test to stay of enforcement of an order for removal of an immigrant pending appeal

therefrom). I am unaware of any decision of the Supreme Court or of the Ninth Circuit applying

the *Hilton/Nken* test to the question whether an entire action should be stayed pending

interlocutory appeal from disposition of a discrete issue, resolution of which did not have the

Page 6 - OPINION AND ORDER

potential either to resolve the action in its entirety or to deprive the district court of jurisdiction over the action in its entirety.

Second, the *Hilton/Nken* test appears on its face to be plainly inapposite in the context of interlocutory appeals from orders resolving fewer than all claims asserted in an action. The test requires the courts to weigh four factors as follows: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434, *quoting Hilton*, 481 U.S. at 776. Plainly, in the context of interlocutory appeals resolution of which will not resolve claims that remain before the district court, the question whether the appeal is or is not likely to succeed on its merits is simply immaterial to the question whether it could be proper to stay proceedings in connection with the remaining claims. Here, CCI asserts that the first factor should be construed as relevant only to the extent that resolution of the interlocutory appeal could resolve all or part of the remaining claim; while I agree with CCI that, as a matter of logic, such a construction could be reasonable, I find no cases applying any such construction to the first *Hilton/Nken* factor.

At least one court has found, as I do, that the *Hilton/Nken* test is properly interpreted as inapplicable in the context of an interlocutory appeal taken from a "discrete" ruling lacking potential to resolve all claims at issue in an action. *See Am. Hotel & Lodging Ass'n v. City of L.A.*, Case No. CV 14-09603-AB, 2015 U.S. Dist. LEXIS 177943, *5-8 (D. Cal. Nov. 5, 2015). The *Am. Hotel* court declined to apply the *Hilton/Nken* test under such circumstances, and elected instead to apply the "same test used in determining whether to stay actions pending

Page 7 - OPINION AND ORDER

interlocutory appeals certified under 28 U.S.C. § 1292(b) – namely, . . . whether (1) resolution by the Ninth Circuit of the issue addressed in the appealed order could materially affect this case and advance the ultimate termination of litigation and (2) whether a stay will promote economy of time and effort for the Court and the parties." *Id.* at *7 (citations, internal quotation marks, and internal modifications omitted). I agree with the *Am. Hotel* court that the Section 1292(b) test appears both applicable and appropriate in the context of interlocutory appeals such as defendants'. In addition to the Section 1292(b) test identified by the *Am. Hotel* court, the courts of the Ninth Circuit traditionally consider the factors discussed by the *Landis* court, *supra*, as applicable generally to motions for stay of proceedings, namely "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268, *citing Landis*, 299 U.S. at 254-255.

Although I find, for the reasons discussed above, that the appropriate factors to be considered in the exercise of the court's discretion whether or not to grant the stay requested here are those of the *Am. Hotel*/Section 1292 test considered together with those of the *Landis*/*CMAX* test, in fact the same conclusion obtains whether the court applies the *Am. Hotel*/Section 1292 test, the *Landis*/*CMAX* test, the *Hilton*/*Nken* test, or any combination thereof.

Considering first the *Landis*/*CMAX* factors, I agree with CCI that in the event the requested stay were granted, CCI would suffer prejudicial harm in that it would continue to be subjected to ongoing injury to its business interests in consequence of defendants' complained-of business model while being deprived of any recourse or opportunity to mitigate that injury at any

time during the pendency of the defendants' interlocutory appeal, whereas if the stay were not

granted CCI would have the opportunity both to make progress in litigating its RICO claim

during the pendency of the appeal and to seek summary adjudication of its RICO claim,

potentially thereby obtaining relief from defendants' complained-of business practices.

I further agree with CCI that the harm defendants assert that they would suffer if the stay

were not granted – namely being required to participate in discovery and other litigation

notwithstanding the immunity to suit to which they argue they are entitled under Oregon's

anti-SLAPP statute, and notwithstanding the possibility they assert exists that resolution of the

pending appeal could foreclose any finding of defendants' liability on CCI's RICO claim – does

not under the circumstances constitute inequity or undue hardship.  I flatly reject the argument

that there exists any public policy to immunize defendants from the need to litigate a federal

claim alleged against them; as defendants are fully aware, Oregon's anti-SLAPP statute is simply

inapplicable to federal claims, *see Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010),

and defendants are not entitled to circumvent the inapplicability of the statute itself to federal law

by applying its underlying public policy rationale to achieve the same impermissible result.

Moreover (as will be discussed in greater detail below), because there is little practical chance

that even if defendants prevail in connection with their pending appeal the Ninth Circuit's ruling

would entirely foreclose the possibility of defendants' liability in connection with CCI's RICO

claim, and because defendants have not shown and cannot show that they are highly likely to

prevail in connection with their pending appeal, the possibility that further pretrial proceedings in

connection with CCI's RICO claim could ultimately prove to have been entirely superfluous in

light of the Ninth Circuit's decision on appeal is simply too attenuated to constitute significant

Page 9 - OPINION AND ORDER

support for defendants' argument in favor of the requested stay.

Finally, I further agree with CCI that delay of discovery pending the outcome of defendants' interlocutory appeal would tend to frustrate the orderly course of justice, in that witness memory could be expected to fade during the period of such delay, the likelihood that evidence could be lost would necessarily increase at least marginally in consequence of such delay, and final resolution of the claim would inevitably be delayed. The *Landis/CMAX* factors thus collectively weigh against granting the requested stay.

Considering next the *Am. Hotel*/Section 1292 factors, I agree with the defendants that there exists a possibility that the Ninth Circuit's resolution of the pending interlocutory appeal could materially impact CCI's RICO claim and could advance the termination of proceedings in connection with that claim. That is, it is logically possible that the Ninth Circuit could hold (for example) that defendants' alleged conduct in misrepresenting to the public that its posted "overall satisfaction rating" for CCI's services was an average of all consumer ratings of CCI's services in defendants' webpages, when in fact defendants removed or suppressed positive reviews before averaging the consumer-submitted ratings, was protected free speech under Section 230 of the Communications Decency Act (the "CDA") and not independently wrongful. In that event, because it would (presumably) be the law of the case that defendants' alleged systematic suppression of positive reviews was a proper exercise of their editorial function as curators of consumer product and service ratings and reviews, CCI's RICO claim would be subject to dismissal under Federal Civil Procedure Rule 12(b)(6) for failure to state a claim, in that defendants' alleged predicate acts of wire fraud would not have involved any false or fraudulent pretenses, representations, or promises, and would therefore not support the RICO claim, *see* 18

Page 10 - OPINION AND ORDER

U.S.C. §§ 1343, 1962, and defendants' alleged predicate acts of extortion would not have

involved any improper threat to harm CCI or its property, and likewise would not support the

RICO claim, *see* Or. Rev. Stat.§ 164.075, 18 U.S.C. §§ 1961(1)(A), 1962.

However, I agree with CCI that the likelihood of such an outcome is remote. As the

Ninth Circuit recently affirmed, "Section 230(c)(1) of the CDA 'only protects from liability (1) a

provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a

state law cause of action, as a publisher or speaker (3) of information provided by another

information content provider.'" *Kimzey v. Yelp! Inc.*, Case Nos. 14-35487, 14-35494, 2016 U.S.

App. LEXIS 16665, *9 (9th Cir. Sep. 2, 2016), *quoting Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,

1100-1101 (9th Cir. 2009). The *Kimzey* court noted that the plaintiff before it had failed

affirmatively to allege that the defendant had authored its own purported consumer reviews, had

made a material contribution to authoring purported consumer reviews, or had modified third-

party-generated reviews so as to render them misleading, and instead had alleged only facts

tending to indicate that the defendant either located consumer-authored reviews elsewhere and

elected of its own initiative to host such reviews on its own pages or in some sense adopted third-

party reviews as its own by creating a "star" rating system, encouraging consumers to generate

"star" ratings, and calculating and displaying the average of all such ratings. *See id.* at *10-17.

Indeed, the *Kimzey* court expressly acknowledged that the "case [wa]s in some sense a simple

matter of a complaint that failed to allege facts sufficient to state a claim that is plausible on its

face." *Id.* at *4. Here, by contrast, CCI expressly alleges that defendants affirmatively

suppressed positive consumer ratings of its services before averaging the ratings provided by

other consumers, while hiding this fact from the public, such that their posted "overall

Page 11 - OPINION AND ORDER

satisfaction rating" of CCI's services was a knowing misrepresentation calculated to denigrate the quality of CCI's services in the eyes of the public, and such that the posted reviews created a misleading impression of consumer opinion. This is precisely the sort of conduct the *Kimzey* court identified as sufficient to survive a motion to dismiss premised on application of Section 230. *See id.* at *9-17. Because the Ninth Circuit has expressly indicated that conduct of the kind alleged herein is not protected speech under the CDA, it appears vanishingly unlikely that the Ninth Circuit will resolve defendants' pending appeal with a ruling that forecloses the possibility that defendants could be liable in connection with CCI's RICO claim.

Because it is logically possible but highly unlikely that resolution of the appeal could materially impact disposition of the remaining RICO claim, I find that the first of the *Am. Hotel*/Section 1292 factors weighs in favor of granting the requested stay, but only marginally.

For much the same reasons discussed above in connection with the *Landis*/*CMAX* factors, however, the second of the *Am. Hotel*/Section 1292 factors weighs significantly more strongly against granting the requested stay. Necessarily, to grant the stay would have a tendency to slow resolution of the RICO claim, would create a risk of fading witness memory, and would increase the difficulty of retaining all material physical evidence. Moreover, the risk of duplicative pretrial efforts is minimal, in that discovery exchanged in connection with the RICO claim is discovery that need not be exchanged in connection with CCI's state-law claims should those claims continue viable following resolution of the pending appeal, such that separate pretrial litigation of the federal claim and the state-law claims is not expected to require duplication of effort.

For all the foregoing reasons, the *Am. Hotel*/Section 1292 factors weigh against granting

the requested stay, whether considered in isolation or together with the *Landis/CMAX* factors. On that basis, I find that it would be inappropriate to exercise the court's discretion to stay further pretrial proceedings in connection with the RICO claim pending disposition of defendants' pending appeal. Defendants' motion (#52) for stay is therefore denied to the extent it addresses pretrial proceedings in connection with CCI's RICO claim.

As stated above, I reach the same conclusion on the *arguendo* assumption that the *Hilton/Nken* factors govern this court's discretion in connection with defendants' motion. In connection with the *Hilton/Nken* test, the Ninth Circuit has found as follows:

> A stay is not a matter of right. It is instead 'an exercise of judicial discretion' that 'is dependent upon the circumstances of the particular case.'" *Nken* [*v. Holder*], 556 U.S. [418,] 433 [(2009)](internal citations omitted) (*quoting Virginian Ry. Co. v. United States*, 272 U.S. 658, 672-73, 47 S. Ct. 222, 71 L. Ed. 463 (1926)). Judicial discretion in exercising a stay is to be guided by the following legal principles, as distilled into a four factor analysis in *Nken*: **"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."** *Id.* at 434 (*citing Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* at 433-34.

*Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (footnote, internal modifications omitted; emphasis supplied). In connection with the *Hilton/Nken* test, the stay inquiry is "flexible" and requires the courts to balance the four factors. *Leiva-Perez v. Holder*, 640 F.3d 962, 964-966 (9th Cir. 2011) (*per curiam*); *see also Hilton v. Braunskill*, 481 U.S. 770, 777-779 (1987); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998).

**The first two factors of the traditional standard are the most critical. It is**

Page 13 - OPINION AND ORDER

> not enough that the chance of success on the merits be **"better than
> negligible."** *Sofinet v. INS*, 188 F.3d 703, 707 (CA7 1999) (internal quotation
> marks omitted). . . . By the same token, **simply showing some "possibility of
> irreparable injury,"** *Abbassi v. INS*, 143 F.3d 513, 514 (CA9 1998), **fails to
> satisfy the second factor**. As the Court pointed out earlier this Term, the
> "'possibility' standard is too lenient." *Winter*, *supra*, at ___, 129 S. Ct. 365, 172 L.
> Ed. 2d 249.

*Nken*, 556 U.S. at 434 (emphasis supplied). The *Lair* court discussed the first of the *Hilton/Nken*

factors as follows:

> Regarding the first factor, *Nken* held that it is not enough that the likelihood of
> success on the merits is "better than negligible" or that there is a "mere possibility
> of relief." *Id.* (internal quotation marks omitted). Since *Nken* did not specify "the
> exact degree of likely success that stay petitioners must show, . . . courts routinely
> use different formulations to describe this [factor]." *Leiva-Perez v. Holder*, 640
> F.3d 962, 966 (9th Cir. 2011) (*per curiam*). We have concluded that many of
> these formulations, including "reasonable probability," "fair prospect,"
> "substantial case on the merits," and "serious legal questions . . . raised," are
> largely interchangeable. *Id.* at 967-68. All of these formulations indicate that, "at
> a minimum," a petitioner must show that there is a "substantial case for relief on
> the merits." *Id.* at 968. The standard does not require the petitioners to show that
> "it is more likely than not that they will win on the merits." *Id.* at 966.

*Lair*, 697 F.3d at 1204 (modifications original).

In connection with the first of the *Hilton/Nken* factors, defendants argue that their

pending appeal raises serious legal questions giving rise to a substantial case for relief, noting in

support that this court's disposition of defendants' special motion to strike rested in part on a

construction of the tort of intentional interference with prospective economic relations as to

which the Oregon cases to not provide significant helpful guidance, and in part on a construction

of the UTPA in which the cases likewise do not provide definitive guidance. I agree with the

defendants that its appeal raises serious legal questions as to these issues, superficially satisfying

the first factor, but to the extent defendants rely on these matters to satisfy the first factor I give

that factor the absolute minimum of weight due to the fact that resolution of defendants' appeal on the basis of either of these legal issues would have no impact whatsoever on disposition of CCI's RICO claim.

Defendants additionally argue that their pending appeal raises serious legal issues in connection with Section 230 of the CDA. As discussed above in connection with the first of the *Am. Hotel*/Section 1292 factors, I agree that if defendants were to prevail on appeal on the basis of their Section 230 argument, disposition of the RICO claim could be significantly impacted. However, also as discussed above, I find that the possibility that defendants could prevail in connection with that argument is remote at best. On the basis of the foregoing findings, i conclude that the first of the *Hilton/Nken* factors weighs in favor of granting the requested appeal, but only marginally.

The *Lair* court discussed the second of the *Hilton/Nken* factors as follows:

> *Nken* held that the second stay factor, "whether the applicant will be irreparably injured absent a stay," requires more than "some possibility of irreparable injury." *Nken*, 556 U.S. at 434-35 (internal quotation marks omitted). But, in contrast to the first factor, we have interpreted *Nken* as requiring the applicant to show under the second factor that there is a probability of irreparable injury if the stay is not granted. *Leiva-Perez*, 640 F.3d at 968 (explaining that while the first factor asks "whether the stay petitioner has made a strong argument on which he could win," the second factor asks us to "anticipate what would happen as a practical matter following the denial of a stay"). In analyzing whether there is a probability of irreparable injury, we also focus on the individualized nature of irreparable harm and not whether it is "categorically irreparable." *Id.* at 969 (*quoting Nken*, 556 U.S. at 435).

*Id.* at 1214. As noted above, defendants argue in connection with the second factor that litigation of the RICO claim in parallel with their appeal from this court's disposition of their special motion to strike would irreparably injure them by subjecting them to suit notwithstanding the

immunity to suit to which they argue they are entitled under Oregon's anti-SLAPP statute. As discussed above, I flatly reject that argument on *Erie* grounds: defendants have no entitlement to immunity in connection with a federal claim brought in federal court. Also as noted above, defendants argue that engagement in the discovery process during the pendency of their appeal would constitute irreparable injury, but because the possibility that exchange of discovery might ultimately prove to have been unnecessary is remote, that possibility is insufficient to satisfy the second factor, which requires a "probability" of injury that is "categorically irreparable. *Id.* The second factor therefore weighs strongly against granting the requested stay.

The *Lair* court discussed the third and fourth of the *Nken/Hilton* factors as follows:

> Finally, *Nken* explained that the last two factors of the test require us to weigh the public interest against the harm to the opposing party. *Nken*, 556 U.S. at 435; *see also Leiva-Perez*, 640 F.3d at 964-66 (holding that the stay inquiry is "flexible" and involves an equitable balancing of the stay factors). In doing so, we again consider "the particulars of each individual case." *Leiva-Perez*, 640 F.3d at 970 (*citing Nken*, 556 U.S. at 436).

*Id.* at 1215. As discussed above, I have found that if the stay were granted the result would be substantial injury to CCI, which would continue to be subjected to ongoing injury from defendants' complained-of business model, and which would face the risk of impaired witness memory and an increased risk of lost evidence. The third factor therefore weighs against granting the requested stay.

As to the fourth factor, I find that the public has a valid interest in the speedy resolution of claims on the basis of reliable evidence, and that the public has a further valid interest in having trustworthy reviews on consumer ratings websites. Each of these interests weighs against granting the requested stay.

Page 16 - OPINION AND ORDER

Weighing the four *Nken/Hilton* factors as directed by the Ninth Circuit, I find that they collectively mitigate against granting the requested stay. I would therefore deny defendants' motion (#52) for imposition of a stay to the extent it addresses pretrial proceedings in connection with CCI's RICO claim, even on the *arguendo* assumption that the court's judgment in connection with defendants' motion is properly guided by the *Nken/Hilton* factors.

## CONCLUSION

For the reasons set forth above, defendants' motion (#52) to stay these proceedings is granted as to trial of CCI's RICO claim and denied as to pretrial proceedings in connection with CCI's RICO claim. No trial date will be set for CCI's RICO claim at any time prior to disposition of defendants' pending interlocutory appeal.

Dated this 26th day of September, 2016.

Honorable Paul Papak
United States Magistrate Judge